## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| DEE NEUKRANZ, individually and as heir of the Estate of Lloyd Neukranz, and on behalf of a class of similarly situated persons, | §<br>§<br>§<br>§<br>§ | |
| Plaintiffs, | §<br>§ | |
| v. | §<br>§ | Civil Action No. 3:19-CV-1681-L-BH |
| CONESTOGA SETTLEMENT SERVICES, LLC; CONESTOGA INTERNATIONAL, LLC; CONESTOGA TRUST SERVICES, LLC; L.L. BRADFORD AND COMPANY, LLC; PROVIDENT TRUST GROUP, LLC; STRATEGIX SOLUTIONS, LTD.; and MICHAEL MCDERMOTT, | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |
| Defendants. | § | Referred to U.S. Magistrate Judge[1] |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Before the Court for recommendation is *Defendant Provident Trust Group, LLC's Motion to Compel Arbitration and Brief in Support*, filed August 5, 2019 (doc. 9).  Based on the relevant filings and applicable law, the motion should be **DENIED in part** and **GRANTED in part**.

### I.  BACKGROUND

Dee Neukranz, both individually (Dee) and in her capacity as heir of the Estate of Lloyd Neukranz (Estate), brings this putative class action on behalf of a class of similarly situated persons (collectively Plaintiffs) against Conestoga Settlement Services, LLC, Conestoga International, LLC, Conestoga Trust Services, LLC (collectively Conestoga Entities); L.L. Bradford and Company, LLC (Bradford); Provident Trust Group, LLC (Provident); Strategix Solutions, Ltd. (Strategix); and

---

[1]By order filed November 1, 2019, this case has been referred for full case management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions. (*See* doc. 52.)

Michael McDermott (McDermott) (collectively Defendants).  (docs. 1-4, 21.)[2]

## A.    **Factual Background**

On or about October 8, 2013, Lloyd William Neukranz executed an application to open a traditional Individual Retirement Account (IRA) with Provident and transferred $770,000 to it to fund the IRA.  (docs. 23 at 9; 23-3; 23-4.)  The application incorporates terms and conditions from a separate custodial account agreement, which provides in relevant part that "[t]his Agreement is subject to all applicable federal laws and regulations and shall be interpreted, construed, and enforced in accordance with and governed by the **laws of the state of Nevada without giving effect to any conflict of law** provisions, and each party hereby submits to the exclusive personal jurisdiction, and waives all objections as to venue for the enforcement of any provision of this Agreement, in the state and federal courts situated in Clark County, Nevada." (doc. 23-4 at 7 (bolded-type original)). Contemporaneously executed with the application was the Direction of Investment - Policy Purchase, which directed Provident to invest the $770,000 with Conestoga Settlement Services, LLC. (doc. 23-3 at 10.)  Provident used the funds to invest in eleven Conestoga life settlement contracts in Mr. Neukranz's name.  (doc. 23 at 9.)

On February 23, 2019, Mr. Neukranz passed away, (doc. 23-6 at 39), and on April 1, 2019, Provident sent Dee a letter informing her that "[a]s the sole designated beneficiary and spouse of Lloyd W. Neukranz," her options with respect to his IRA account were to (1) assume the account as her own by opening a new IRA account under her own name; (2) distribute the account; or (3) disclaim the assets in the account (*id.* at 2).  Plaintiffs allege that "the only option that did not involve

---

[2]Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

paying taxes or forfeiting assets" required Dee "to open her own, personal 'traditional account' (IRA) with Provident and then complete paperwork to transfer [Mr. Neukranz's] IRA assets to Dee's IRA." (*Id.* at 10.)

On April 7, 2019, Dee executed a Traditional IRA Application (Application) to open her own personal IRA with Provident. (doc. 10 at 24-27.) Section 9 of the Application, titled "IRA Owner Agreement and Authorization" and immediately preceding Dee's signature, provides:

> I understand the eligibility requirements for the type of IRA deposit I am making and I state that I do qualify to make the deposit. I have received a copy of the Application, the IRA Custodial Account Agreement, Disclosure Statement, Fee Schedule, and Financial Disclosure. I understand that the terms and conditions that apply to this IRA are contained in this Application and the Custodial Account Agreement. I agree to be bound by those terms and conditions. Within seven days from the date I open this IRA I may revoke it without penalty by mailing or delivering a written notice to the Custodian. I assume complete responsibility for 1) determining that I am eligible for an IRA each year I make a contribution, 2) ensuring that all contributions I make are within the limits set forth by the tax laws, and 3) the tax consequences of any contribution (including rollover contributions) and distributions.

(*Id.* at 27).

Section 8.07 of the referenced Custodial Account Agreement (Custodial Agreement) is titled "Arbitration" and provides:

> Any dispute, claim or controversy arising out of, in connection with or relating to the performance of this agreement or its termination, including the determination of the scope or applicability of this agreement to arbitrate, will be resolved by binding arbitration before a single arbitrator in the state of our principal place of business, in accordance with the Commercial Arbitration Rules of the American Arbitration Association (the 'AAA'). To the extent that any of the provisions of this agreement conflict with the [sic] any AAA rules, the express provisions of this agreement will apply. The arbitrator will be a practicing attorney or retired judge with experience with Individual Retirement Accounts and the other subject matter(s) of the claim. The arbitrator's award will be final and binding on the parties, and judgment rendered thereon may be entered in any court having jurisdiction. The arbitration proceedings and arbitrator's award will be maintained by the parties and arbitrator as strictly confidential, except as is otherwise required by court order, or as is necessary to confirm, vacate or enforce the award, and for disclosure in confidence to the

following representatives of a party that have a need to know and agree to keep such information confidential: attorneys, tax advisors and senior management. BY AGREEING TO THIS ARBITRATION PROVISION, YOU AND WE ARE GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT, INCLUDING THE RIGHT TO A TRIAL BY JURY.

(*Id.* at 10 (capitalization original)).

The Custodial Agreement also states that "[i]f it is necessary to apply any state law to interpret and administer this agreement, the law of the state in which we are chartered will govern," and that "[i]f any part of this agreement is held to be illegal or invalid, the remaining parts will not be affected." (*Id.* at 13.)  In addition, section 8.14 provides:

Amendments - We have the right to amend this agreement at any time. Any amendments we make, including those made to comply with the [Internal Revenue] Code and related regulations, does not require your consent. You will be deemed to have consented to any other amendment unless, within 30 days from the date we send the amendment, you notify us in writing that you do not consent.

(*Id.*)

B.    **Procedural History**

On June 4, 2019, Plaintiffs filed this putative nationwide class action against Defendants in the 160th District Court of Dallas County, Texas, asserting causes of action for aiding and abetting, common law fraud, fraud by non-disclosure, civil conspiracy, breach of fiduciary duty, and violations of the Texas Theft Liability Act (TTLA), Texas Civil Practice and Remedies Code §§ 134.002-003. (doc.1-4.)  On July 15, 2019, Provident removed this action to federal court under the Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. §§ 1332(d) and 1453(b). (*See* doc. 1.)

On August 5, 2019, before any other motions or discovery requests were filed, Provident moved to compel arbitration. (doc. 9.)  On August 30, 2019, a Texas probate court admitted Mr. Neukranz's will to probate, opened his estate for administration, and formally designated Dee as the

independent representative. (docs. 23-8, 23-9.) On September 6, 2019, Plaintiffs filed their response to the motion to compel arbitration and a first amended complaint. (docs. 21, 23.) The first amended complaint added a conversion claim and abandoned the three aiding and abetting claims. (*See* doc. 21.) Plaintiffs now assert claims against Defendants for breach of fiduciary duty, conversion, civil conspiracy, and violations of the TTLA, and the Estate asserts separate claims for fraud and fraud by non-disclosure. (*Id.* at 44-60.) They seek monetary damages, financial accounting, and other declaratory relief. (*Id.* at 60-64.) On September 20, 2019, Provident filed its reply in support of its motion to compel. (doc. 26.)

## II.  FEDERAL ARBITRATION ACT

The Federal Arbitration Act (FAA) provides that "a written agreement to arbitrate in any contract involving interstate commerce or a maritime transaction 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 474 (1989) (quoting 9 U.S.C. § 2). It "embodies the national policy favoring arbitration." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). The FAA provides "for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (citing 9 U.S.C. §§ 3-4.) A court may not compel arbitration under the FAA until it is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C § 4.

Courts in the Fifth Circuit employ a two-step inquiry when determining a motion to compel arbitration under the FAA. *See Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)).

The first step is to determine whether the parties agreed to arbitrate the dispute at issue. *Webb v. Investacorp., Inc.*, 89 F.3d 252, 258 (5th Cir. 1996) (per curiam). The second step is to determine "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Safer v. Nelson Fin. Grp., Inc.*, 422 F.3d 289, 294 (5th Cir. 2005) (quoting *Webb*, 89 F.3d at 258); *accord OPE Int'l LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 445-46 (5th Cir. 2001) (per curiam) (citing *Mitsubishi*, 473 U.S. at 628.). "Only if the court finds there is an agreement to arbitrate does it consider the second step of whether any legal constraints render the claims nonarbitrable." *Edwards v. Conn Appliances, Inc.*, No. 3:14-CV-3529-K, 2015 WL 1893107, at *2 (N.D. Tex. Apr. 24, 2015) (citing *Webb*, 89 F.3d at 258).

In determining whether the parties agreed to arbitrate the dispute at issue, courts must consider "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Safer*, 422 F.3d at 294 (citations omitted); *accord Webb*, 89 F.3d at 258. In light of the strong federal policy favoring arbitration, "the Supreme Court has held that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Safer*, 422 F.3d at 294 (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). This presumption "does not apply to the determination of whether there is a valid agreement to arbitrate between the parties,'" however. *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003) (quoting *Fleetwood Enters. Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002)).

### III. APPLICABLE STANDARD

"While the two-step inquiry used to consider a motion to compel arbitration under the FAA is well-settled, 'the [Fifth] Circuit has never discussed the appropriate standard for a district court to

apply when considering a motion to stay or compel arbitration.'" *Jackson v. Royal Caribbean Cruises, Ltd.*, 389 F. Supp. 3d 431, 443 (N.D. Tex. 2019) (quoting *Rain CII Carbon, LLC v. ConocoPhillips Co.*, No. CIVA 09-4169, 2010 WL 148292, at *3 (E.D. La. Jan. 11, 2010), and citing *Grant v. House of Blues New Orleans Restaurant Corp.*, No. CIV.A. 10-3161, 2011 WL 1596207, at *2 (E.D. La. Apr. 27, 2011)). *Jackson* noted that "'[t]he majority of other circuits apply a summary judgment-like standard, giving deference to the claims of the non-movant.'" *Id.* (quoting *Rain CII Carbon*, 2010 WL 148292, at *3 (citing *Clutts v. Dillard's, Inc.*, 484 F. Supp.2d 1222, 1224 (D. Kan. 2007)), and citing *Grant*, 2011 WL 1596207, at *2-4 (collecting cases using summary judgment standard on motion to compel arbitration).[3] District courts in this circuit have also considered motions to compel arbitration under the summary judgment standard. *See id.*; *see also Rain CII Carbon*, 2010 WL 148292, at *3; *Rocha v. Macy's Retail Holdings, Inc.*, No. EP-17-CV-73-PRM, 2017 WL 4399575, at *2 (W.D. Tex. Oct. 3, 2017) ("Similar to a motion for summary judgment, and subject to the same evidentiary standards, the party alleging an arbitration agreement must present summary proof that the dispute is subject to arbitration ... and the party resisting arbitration may contest the opponent's proof or present evidence supporting the elements of a defense to enforcement." (citation omitted)). "The courts that

---

[3]*See, e.g., BOSC, Inc. v. Board of County Commissioners of County of Bernalillo*, 853 F.3d 1165, 1177 (10th Cir. 2017) (citing *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012) (applying the similar framework of "summary judgment practice" when considering a motion to compel arbitration)); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (quoting *Bensadoun v. Jobe–Riat*, 316 F.3d 171, 175 (2d Cir. 2003) (explaining that courts deciding motions to compel apply a "standard similar to that applicable for a motion for summary judgment")); *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 774 (3d Cir. 2013) (explaining that where "the non-movant has come forward with enough evidence in response to the motion to compel arbitration to place the question in issue," the Rule 56 summary judgment standard applies); *Magnolia Capital Advisors, Inc. v. Bear Stearns & Co.*, 272 F. App'x 782, 785 (11th Cir. 2008) (citing *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 n. 9 (3d Cir.1980) (applying "summary judgment standard in deciding what is sufficient evidence to require a trial on the issue of whether there was an agreement to arbitrate")); *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002) (applying the standard required of a party opposing summary judgment under Rule 56 to the evidentiary standard a party seeking to avoid compelled arbitration must meet); *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.*, 925 F.2d 1136, 1141 (9th Cir. 1991) ("Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement[, and the court] should give to the opposing party the benefit of all reasonable doubts and inferences that may arise.").

use the summary judgment standard of Fed.R.Civ.P. 56 have found it appropriate 'because the district court's order compelling arbitration is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate.'" *Grant*, 2011 WL 1596207, at *3 (quoting *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 528, 532 (3rd Cir. 2009) (quotation omitted)) (citations omitted); *see* 9 U.S.C. § 4 (a district court should not order arbitration unless it is "satisfied that the making of arbitration agreement ... is not in issue"). This Court agrees with the weight of authority and likewise applies the summary judgment standard.

Under this well-settled standard, summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record that reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[I]f the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). The moving party can also meet its summary judgment burden by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325 (internal quotation omitted). There is "no genuine issue as to

8

any material fact [where] a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex Corp.*, 477 U.S. at 324. It must go beyond its pleadings and designate specific facts to show the existence of a genuine issue for trial. *Id.*; *Anderson*, 477 U.S. at 249.[4] While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions satisfy the non-movant's summary judgment burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).

When considering a motion to compel arbitration under this summary judgment framework, the moving party must first "present evidence sufficient to demonstrate an enforceable agreement to arbitrate." *Clutts*, 484 F. Supp. 2d at 1224 (citing *Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995)). "This burden does not require the moving party to show initially that the agreement would be *enforceable*, merely that one existed." *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010) (emphasis in original). Once this burden has been met by the movant, the burden shifts to the non-movant to raise a genuine dispute of material fact regarding the existence of an agreement to arbitrate. *See Hancock,* 701 F.3d at 1261. "Just as in summary judgment proceedings, a party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration

---

[4]"The parties may satisfy their respective burdens by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials.'" *Rooters v. State Farm Lloyds*, 428 F. App'x 441, 445 (5th Cir. 2011) (citing Fed. R. Civ. P. 56(c)(1)).

rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *See Tinder*, 305 F.3d at 735.  "Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 106 (3d Cir. 2000) (quoting *Par–Knit*, 636 F.2d at 54)).

## IV.  MOTION TO COMPEL

Provident moves to compel arbitration based on the language in the Custodial Agreement, which mandates arbitration of any dispute relating to Dee's IRA.  (*See* doc. 9.)  Plaintiffs respond that "[t]he Estate cannot be compelled to arbitrate because Bill Neukranz never agreed to arbitrate any disputes with Provident, and no person acting on behalf of Bill's Estate ever agreed to arbitrate the Estate's claims."  (doc. 23 at 15.)  They also argue that Dee cannot be compelled to arbitrate her individual claims because the arbitration clause in the Custodial Agreement is invalid as it is illusory and unconscionable.  (*Id.* at 9.)

### A.    <u>Agreement</u>

As noted, a district court must first determine whether a valid arbitration agreement exists between *all* the parties being compelled to arbitration.  *See In re FirstMerit Bank, N.A.*, 52 S.W.3d at 753.  This requires consideration of "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Safer*, 422 F.3d at 294 (citations omitted); *accord Webb*, 89 F.3d at 258.  Courts should generally apply "ordinary state-law principles that govern the formation of contracts," but must give due regard to the federal policy favoring arbitration and resolve any ambiguities as to the scope of the arbitration clause itself in favor of arbitration. *Webb*, 89 F.3d at 258 (quoting *First Options of Chicago, Inc. v.*

*Kaplan*, 514 U.S. 938, 944 (1995)).

Under Texas law,[5] a party who seeks to compel arbitration has the initial burden to establish the existence of an arbitration agreement and to show that the asserted claims fall within its scope. *See In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex. 1999) (per curiam), *abrogated in part by In re Halliburton Co.*, 80 S.W.3d 566 (Tex. 2002); *Wachovia Sec., LLC v. Emery*, 186 S.W.3d 107, 113 (Tex.App.–Houston [1st Dist.] 2006, no pet.). The burden then shifts to the party opposing arbitration to present evidence showing why the arbitration agreement should not be enforced. *Wachovia Sec.*, 186 S.W.3d at 113. The party opposing arbitration may show, for example, that the arbitration agreement was procured in an unconscionable manner, or induced or procured by fraud or duress. *See In re Oakwood*, 987 S.W.2d at 573.

Here, Provident presents the Application with Dee's signature, which referenced the Custodial Agreement and incorporated its terms and conditions, including its arbitration provision. (doc. 10 at 7-22, 24-27.) Plaintiffs do not dispute that Dee signed the Application, but claim that the evidence fails to show that the Estate was a party to the Custodial Agreement and to its arbitration provision.

---

[5]Provident argues that Nevada law controls the interpretation of the agreement to arbitrate based on the choice of law provision in the Custodial Agreement, and notes that Nevada has a strong public policy favoring arbitration enforcement. (doc. 9 at 12.) Plaintiffs generally argue that Texas law applies because Texas has a materially greater interest than Nevada in this dispute "as the suit relates to a fraudulent scheme to steal Texas citizens' retirement savings and the relevant agreements involved were all negotiated and signed in Texas." (doc. 23 at 14.) While Provident's reply brief reiterates that Nevada law applies under the choice of law provision, it only relies on Texas and Fifth Circuit law in response to Plaintiffs' challenges to the agreement to arbitrate. (*See* doc. 26.) Further, it suggests that no meaningful conflict exists between Texas and Nevada law as to considerations of the arbitration provision's validity. (*Id.* at 5-6.) When a party fails to brief the laws of other states, it forfeits any choice of law argument. *See Arthur W. Tifford, PA v. Tandem Energy Corp.*, 562 F.3d 699, 705 n. 2 (5th Cir. 2009) ("[B]y failing to brief any other state's law, the parties have forfeited any choice of law argument."); *see also Friou v. Phillips Petroleum Co.*, 948 F.2d 972, 974 (5th Cir. 1991) ("[The issue] is not discussed in their briefs. A party who inadequately briefs an issue is considered to have abandoned the claim."). The Court therefore applies Texas law. *See, e.g., Marsoft, Inc. v. United LNG, L.P.*, No. CIV.A. H-13-2332, 2014 WL 1338709, at *7 (S.D. Tex. Mar. 31, 2014) ("By failing to brief any other law, Defendant has forfeited a choice of-law argument with regard to its motion to compel arbitration.") (citing *Arthur W. Tifford, PA*, 562 F.3d at 705 n. 2); *CIMC Vehicles Grp. Co. v. Direct Trailer, LP*, No. CIV.A. H-10-709, 2012 WL 4017985, at *9 (S.D. Tex. Aug. 24, 2012), *adopted by* 2012 WL 4018200 (S.D. Tex. Sept. 12, 2012) ("By uniformly relying on Texas law, the parties agree that it applies to their controversy. Absent any indication in the record that any other law should apply, the court applies Texas law.") (citing same).

(doc. 23 at 15.)  Because of this, they argue, the Estate's claims cannot be compelled to arbitration. (*Id.*)  They also argue that the arbitration provision is invalid and cannot be enforced to compel arbitration of Dee's individual claims because it is illusory and unconscionable. (*Id.* at 9.)

### 1.    The Estate

It is undisputed that the Application, dated April 7, 2019, identifies the IRA Owner as "Dee Neukranz" and was signed by her individually with no reference to Mr. Neukranz or the Estate.  (doc. 10 at 7-27.)[6]  It is also undisputed that Dee was appointed executrix of the Estate on August 30, 2019. (docs. 23-8, 23-9.)  Provident maintains that because Dee is the "only named plaintiff in this case," and she signed an agreement to arbitrate, it does not need to show that Mr. Neukranz or the Estate separately entered into an arbitration agreement, noting that an estate lacks the legal capacity to sue or be sued, and needs its "personal representative[,] or its heirs and beneficiaries must participate on its behalf."  (doc. 26 at 8-9 (citing *Henson v. Estate of Crow*, 734 S.W.2d 648, 649 (Tex. 1987), and *Bernstein v. Portland Sav. & Loan Ass'n*, 850 S.W.2d 694, 699 (Tex. App.—Corpus Christi 1993, writ denied)).).[7]

The estate of a deceased person "is not a legal entity and may not properly sue or be sued as such."  *Belt v. Oppenheimer Blend Harrison & Tate*, 192 S.W.3d 780, 786-87 (Tex. 2006) (citation

---

[6]Notably, the Application was to open a traditional IRA, which is a type of account that "offer[s] tax advantages to encourage *individuals* to save for retirement."  *See Clark v. Rameker*, 573 U.S. 122, 124 (2014) (emphasis added); *see generally* 26 U.S.C. § 408.  The Estate is not an individual.

[7]Provident's reply contends for the first time that Mr. Neukranz agreed to arbitrate because "he was provided the amended Custodial Agreement on or about January 26, 2019, and never objected." (doc. 26 at 5.)  Because this evidentiary basis was raised for the first time in its reply, Provident's new argument will not be considered. *See Springs Indus., Inc. v. Am. Motorists Ins. Co.*, 137 F.R.D. 238, 239 (N.D. Tex. 1991); *see, e.g., Pennsylvania Gen. Ins. Co. v. Story*, No. 3:03-cv-0330-G, 2003 WL 21435511, at *1 (N.D. Tex. June 10, 2003) ("[A] court generally will not consider arguments raised for the first time in a reply brief."); *Highpoint Risk Servs. LLC v. Companion Prop. & Cas. Ins. Co.*, No. 3:14-CV-3398-L, 2015 WL 5613336 (N.D. Tex. Aug. 25, 2015), *adopted by* 2015 WL 5666727 (N.D. Tex. Sept. 24, 2015) (declining to consider new arguments made for the first time in a reply brief).  Even if considered, however, the recommendation would remain the same as Provident fails to "present evidence sufficient to demonstrate an enforceable agreement to arbitrate" by Mr. Neukranz. *See Clutts*, 484 F. Supp. 2d at 1224.

omitted).  Because an estate lacks the legal capacity to sue as a standalone party, the authorized representative of the estate must bring a claim on its behalf. *Id.*  "In Texas, an estate's representative is either the 'executor' if named in the will or the 'administrator' if the person dies intestate." *Dukes v. Strand*, No. 3:15-CV-3600-BT, 2019 WL 2567687, at *2 (N.D. Tex. June 21, 2019) (quoting *In re Seitz*, 430 B.R. 761, 762 (Bankr. N.D. Tex. 2010) (internal citations omitted)); *see also* Tex. Estates Code Ann. § 22.031.  The executor's authority and duty to act on behalf of an estate is vested upon his appointment by the probate court.  *See Jefferson State Bank v. Lenk*, 323 S.W.3d 146, 150 (Tex. 2010); *see also In re Seitz*, 430 B.R. at 762 (citations omitted) ("The personal representative is not authorized to act on behalf of the deceased debtor until Letters Testamentary or Letters of Administration are issued by the courts.").  It is longstanding Texas law that an "executor may also act in another capacity concerning the estate." *Accidental Oil Mills v. Tomlinson*, 8 S.W.2d 558, 560 (Tex. Civ. App.—Austin 1928, writ ref'd).  While the executor is considered the estate's agent "when contracting for anything necessary for the administration of the estate," *Ward v. Prop. Tax Valuation, Inc.*, 847 S.W.2d 298, 300 (Tex. App.—Dallas 1992, writ denied), "contracts of executors or administrators are not binding upon their estates unless such contracts are authorized by statute or extended by the terms of a will," *Kuteman v. Stone*, 150 S.W.2d 102, 106 (Tex. Civ. App.—Amarillo 1941, no writ).  Further, "Texas law does not presume agency; the party alleging agency has the burden of proving it." *Kahn v. Imperial Airport, L.P.*, 308 S.W.3d 432, 441 (Tex. App.—Dallas 2010, no pet.) (citing *IRA Resources, Inc. v. Griego*, 221 S.W.3d 592, 597 (Tex. 2007)).

Provident has not offered any authority finding an estate's lack of capacity to file suit as a standalone party a proper basis for compelling it to arbitration when the decedent's spouse, in her individual capacity, executes an agreement with an arbitration provision.  In *In re Estate of Hendricks*,

05-02-00871-CV, 2002 WL 1380422, at *1 (Tex. App.—Dallas June 27, 2002, no pet.), a husband signed agreements to open two accounts with a brokerage firm, but neither agreement contained an arbitration provision. After he died, his widow opened a new individual account with the brokerage firm and requested that the funds from her husband's accounts be transferred to her new account. The widow signed an agreement with the brokerage firm that included a provision agreeing to arbitrate disputes between the parties. The widow later sued the brokerage firm in her capacity as executrix of her husband's estate for mismanagement of his accounts. The brokerage firm moved to compel arbitration of the estate's claims based on the arbitration provision in the agreement associated with the widow's account. The trial court granted the motion, and the widow sought a writ of mandamus. The intermediate appeals court vacated the order compelling arbitration "because the executrix of the Estate of Sterling Hendricks is not a signatory to and is not bound by the terms of an arbitration agreement signed by Mrs. Hendricks, individually, when the executrix is not making any claims requiring reliance on the terms of the agreement containing the arbitration provision." *Id.* (citing *Southwest Texas Pathology Assoc., L.L.P. v. Roosth*, 27 S.W.3d 204, 208, (Tex.App.–San Antonio 2000, orig. proceeding); *In re Conseco Fin. Serv. Corp.*, 19 S.W.3d 562, 571 (Tex.App.–Waco 2000, orig. proceeding).

As in *In re Estate of Hendricks*, Mr. Neukranz opened an IRA account with Provident, and the agreement associated with his account did not contain an arbitration provision. After he passed away Dee, opened a new IRA account with Provident and requested that the funds from his IRA account be transferred to her account. She also signed an agreement with an arbitration provision. Although Dee is suing Provident both individually and as the representative of the Estate, none of the claims by the Estate relies on the terms of the Custodial Agreement. As in *In re Estate of Hendricks*, Dee is not

14

a signatory to the arbitration provision in her capacity as an heir and representative of the Estate, and her signature on the agreement individually is not a clear and unmistakable agreement to submit claims by the Estate against Provident to arbitration. *See id* at *1; *see also Leshin v. Oliva*, 04-14-00657-CV, 2015 WL 4554333, at *6 (Tex. App.—San Antonio July 29, 2015, no pet.) ("evidence that an individual signed the arbitration agreement as an agent in his representative capacity is not clear and unmistakable evidence that the individual, in his individual capacity, agreed to arbitrate the issue of arbitrability").[8] Significantly, Dee was not formally appointed by the probate court as the executrix of the Estate until August 30, 2019–approximately five months after she executed the Application. (*See* docs. 23-8, 23-9.) As noted, an executrix has no power to act on behalf of the estate until the will is probated or is otherwise qualified as directed by statute. *See Kuteman*, 150 S.W.2d at 106; *Neel v. Maurice*, 223 S.W.2d 690, 693 (Tex. Civ. App.—El Paso 1941, no writ) ("an executor derives no power until the will is probated and he qualifies as directed by statute").

Because Provident seeks to compel arbitration of the Estate's claims based on an arbitration agreement executed by Dee, it bears the burden to demonstrate its validity to compel Dee individually *and* the Estate to arbitration. *See Clutts*, 484 F. Supp. 2d at 1224. As discussed, Dee signed the Application with no indication of her representative capacity, and it was executed five months before she was appointed executrix of the Estate. Provident has not provided any evidence or legal authority supporting its argument that the Estate had agreed to arbitrate by way of the Application signed by

---

[8]Texas and federal law recognize six theories under which a court could compel a non-signatory to arbitrate. *In re Merrill Lynch Trust Co.*, 235 S.W.3d at 191; *Bridas S.A.P.I.C. v. Government of Turkmenistan*, 345 F.3d 347, 356 (5th Cir. 2003). Those theories include (1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing/alter ego, (5) estoppel, and (6) third-party beneficiary. *Bridas*, 345 F.3d at 356. Provident's motion to compel arbitration does not invoke or address any of these theories in support of its motion.

Dee.[9]  Accordingly, its motion to compel arbitration of the Estate's claims should be denied.

### 2.    Dee

As discussed, the parties do not dispute that Dee signed the Application, which incorporated the arbitration provision in the Custodial Agreement.  It is also uncontroverted that the language in the arbitration provision broadly covers "[a]ny dispute, claim or controversy arising out of, in connection with or relating to the performance of this agreement or its termination." (*See* doc. 10 at 10.)  Given these facts, Provident has met its burden with respect to Dee individually.

The burden now shifts to Plaintiffs to show why the agreement signed by Dee should not be enforced.  Plaintiffs argue that the arbitration agreement fails as a matter of contract law because it is illusory and unconscionable. (doc. 23 at 9.)

### a.    Illusory

Under Texas law, arbitration agreements, like all other contracts, must be supported by consideration. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006) (citation omitted). "In the context of stand-alone arbitration agreements, binding promises are required on both sides as they are the only consideration rendered to create a contract. But when an arbitration clause is part of an underlying contract, the rest of the parties' agreement provides the consideration." *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 607 (Tex. 2005) (citations omitted).

Still, an arbitration clause may be illusory "if one party can 'avoid its promise to arbitrate by amending the provision or terminating it altogether.' " *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d

---

[9]Provident also argues for the first time in its reply brief that Dee ratified the arbitration provision "when she chose to keep the account and transact business from its funds by continuing to make premium payments" after being named the personal representative. (doc. 26 at 9.)  As discussed, Provident's ratification argument will not be considered because it was raised for the first time in its reply. *See Springs Indus., Inc.*, 137 F.R.D. at 239.  Even if considered, however, the recommendation would remain the same. *See Anderson v. Badger*, 693 S.W.2d 645, 647 (Tex.App.—Dallas 1985, writ ref'd n.r.e.) ("The doctrine of ratification, however, does not apply where the third party intends to deal, not with the principal, but rather with the agent in the agent's individual capacity.").

202 (5th Cir. 2012) (quoting *In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010)).  If one party to an arbitration agreement seeks to invoke arbitration to settle a dispute, and the other party can suddenly change the terms of the agreement to avoid arbitration, the agreement has been illusory from the outset. *Id.*; *D.R. Horton, Inc. v. Brooks*, 207 S.W.3d 862, 867 (Tex. App.–Houston [14th Dist.] 2006, no pet.) ("An illusory promise is one that fails to bind the promisor because he retains the option of discontinuing performance without notice.").  "This is not to say, however, that if a party retains any ability to terminate the agreement, the agreement is illusory." *Nelson v. Watch House Intern., LLC*, 815 F.3d 190, 193 (5th Cir. 2016) (internal quotations omitted).  "[W]here an arbitration clause is subject to unilateral modification or termination, such agreements are upheld as binding . . . when they feature guarantees to prior notice and no retroactive application." *Henry & Sons Constr. Co., Inc. v. Campos*, 510 S.W.3d 689, 694 (Tex. App.—Corpus Christi 2016, pet. denied) (citing *In re Halliburton Co.*, 80 S.W.3d 566, 569-70 (Tex. 2002)) (other citations omitted).  Even if a party retains the ability to modify the arbitration agreement, it is not illusory if there is a "savings clause" that requires advance notice and prevents its retroactive application. *See In re Halliburton Co.*, 80 S.W.3d at 569-70.

Plaintiffs argue that the arbitration provision is illusory because the Custodial Agreement "gives Provident the unilateral power to modify or terminate the arbitration clause at any time without the other party's consent and the agreement contains no provision limiting this right to prospective claims or providing for prior notice."  (doc. 23 at 22.)  Section 8.14 states:

> We have the right to amend this agreement at any time. Any amendments we make, including those made to comply with the [Internal Revenue] Code and related regulations, does not require your consent. You will be deemed to have consented to any other amendment unless, within 30 days from the date we send the amendment, you notify us in writing that you do not consent.

17

(doc. 10 at 13.)

A court construes an arbitration agreement according to the rules applicable to contract interpretation. *Ellison v. Canton Long Term Care, LLC*, 2:15-CV-1650-JRG-RSP, 2016 WL 2942292, at *3 (E.D. Tex. May 20, 2016) (citing *J.M. Davidson, Inc.*, 128 S.W.3d at 229). "In construing a written contract, the primary concern of the court is to ascertain and give effect to the parties' intentions as expressed in the instrument." *J.M. Davidson, Inc.*, 128 S.W.3d at 229. If the contract can be given a definite or certain legal meaning, it is unambiguous as a matter of law. *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex.1996). If the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous, therefore giving rise to a question of fact. *Id.* "Only after a contract is found to be ambiguous may parol evidence be admitted for the purpose of ascertaining the true intentions of the parties expressed in the contract." *Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 926 S.W.2d 280, 283 (Tex. 1996). Courts "must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Sharpe v. AmeriPlan Corp.*, 769 F.3d 909, 915 (5th Cir. 2014) (quoting *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011).

Here, Section 8.14 indicates that any amendment by Provident does not require Dee's *express* consent and that she will have implicitly consented to an amendment by not objecting to it within thirty days of its notice. (*See* doc. 10 at 13.) Based on this language, Provident did not retain the unilateral right to amend the arbitration agreement at any time with retroactive application; the amendment can be rejected by the other side within thirty days from the date it is sent. The accountholder's ability to reject any amendment within a thirty day notice window provides sufficient

18

guarantee of "prior notice and no retroactive application." *See Henry & Sons Constr. Co., Inc.*, 510 S.W.3d at 694.  The arbitration agreement is not void, invalid, or unenforceable as illusory.

> **b.    Unconscionable**

In Texas,[10] an unconscionable contract is unenforceable. *See In re Poly-Am., L.P.*, 262 S.W.3d 337, 348 (Tex. 2008).  Unconscionability under Texas law can either be procedural, if it involves circumstances surrounding the adoption of the arbitration provision, or substantive, if it concerns the fairness of the arbitration provision itself. *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 301 (5th Cir. 2004) (citing *In re Haliburton Co.*, 80 S.W.3d 566, 571 (Tex. 2002)).  "In determining whether an agreement is unconscionable, the court must examine 'the entire atmosphere in which the agreement was made; the alternatives, if any, available to the parties at the time the contract was made; the 'nonbargaining ability' of one party; whether the contract was illegal or against public policy; and whether the contract was oppressive or unreasonable.'" *Fat Butter, Ltd v. BBVA USA Bancshares, Inc*, 4:09-CV-3053, 2010 WL 11646900, at *16 (S.D. Tex. Apr. 13, 2010), *adopted sub nom. by Fat Butter, Ltd. v. BBVA USA Bancshares, Inc.*, CIV.A. H-09-3053, 2010 WL 8756271 (S.D. Tex. Apr. 29, 2010) (quoting *Alamo Moving & Storage One Corp. v. Mayflower Transit L.L.C.*, 46 F. App'x 731, 2002 WL 1973484, at *2 (5th Cir. July 31, 2002)).  "The burden of proving unconscionability rests on the party seeking to invalidate the arbitration agreement." *Id.*  The court may only evaluate

---

[10]As discussed, Plaintiffs initially argued that the Nevada choice of law provision should not be enforced and Texas law should apply because Texas has a materially greater interest than Nevada in this dispute. (doc. 23 at 14.) Nevertheless, they rely on Nevada law in support of their unconscionability argument without explanation.  "While a federal court is required to take judicial notice of the content of the laws of every state, a party has 'an obligation to call the applicability of another state's law to the court's attention in time to be properly considered.'" *ACE Am. Ins. Co. v. Danallan, Inc.*, No. EP-08-CV-296-DB, 2009 WL 10698760, at *2 (W.D. Tex. Apr. 23, 2009) (quoting *Kucel v. Walter E. Heller & Co.*, 813 F.2d 67, 74 (5th Cir. 1987)).  Because they do not brief why the laws of Nevada apply to this particular issue, "they have waived any alternative choice-of-law argument." *Indian Harbor Ins. Co. v. KB Lone Star, Inc.*, No. H-11-CV-1846, 2012 WL 3866858, at *3 (S.D. Tex. Sept. 5, 2012) (citing *Arthur W. Tifford, PA*, 562 F.3d at 705 n. 2); *see also Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("A party who inadequately briefs an issue is considered to have abandoned the claim.").  Accordingly, Texas law is also applied to the unconscionability issue.

the unconscionability of the arbitration provision, not the contract as a whole. *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 430 (5th Cir. 2004).

*i.   Procedural*

Procedural unconscionability examines "the contract formation process and the alleged lack of meaningful choice." *BDO Seidman, LLP v. J.A. Green Dev. Corp.*, 327 S.W.3d 852, 858 (Tex. App.—Dallas 2010, no pet. h.). "The focus is on the facts surrounding the bargaining process." *In re Rangel*, 45 S.W.3d 783, 786 (Tex. App.—Waco 2001, orig. proceeding).

Plaintiffs initially argue that the arbitration provision is procedurally unconscionable because the Application is a contract of adhesion, as "accountholders lacked a meaningful opportunity to negotiate its terms." (*See* doc. 23 at 28.) In Texas, "[a]dhesion contracts are not automatically or *per se* unconscionable, and there is nothing *per se* unconscionable about arbitration agreements." *In re Lyon Fin. Servs.*, 257 S.W.3d 228, 233 (Tex. 2008); *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 608 (Tex. 2005). Because adhesive contracts are not considered automatically unconscionable under Texas law, Plaintiffs' procedural unconscionability challenge to the arbitration provision on grounds that the Custodial Agreement is an adhesion contract is without merit. *See Fat Butter, Ltd*, 2010 WL 11646900, at *17.[11]

Plaintiffs also argue that the circumstances of the Application support procedural unconscionability because Dee had to make a decision regarding her husband's IRA in the wake of his death. (doc. 23 at 28-29.) Although Provident provided Dee with three options with respect to Mr.

---

[11]Plaintiffs contend that adhesion contracts are procedurally unconscionable under Nevada law. (*See* doc. 23 at 27-28.) They waived any argument as to the applicability of Nevada law when they failed to adequately brief the choice of law issue on unconscionability. *See Arthur W. Tifford, PA*, 562 F.3d at 705 n. 2*; Indian Harbor Ins. Co.*, 2012 WL 3866858, at *3. Nevertheless, Plaintiffs would still need to demonstrate an agreement's substantive unconscionability because "Nevada law requires both procedural and substantive unconscionability to invalidate a contract as unconscionable." *U.S. Home Corp. v. Michael Ballesteros Trust*, 415 P.3d 32, 41 (Nev. 2018).

Neukranz's IRA account, Plaintiffs contend that "the only option that did not involve incurring taxes or forfeiting the assets was to open her own Provident IRA on Provident's terms." (*Id.*) In Texas, a contract is not procedurally unconscionable simply because it results from a "take it or leave it" offer. *See In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 608 (Tex. 2005) (holding that a contract was not procedurally unconscionable simply because the plaintiffs were "forced to accept it"). There is no evidence in the record that the process through which Dee entered into the agreement with Provident was unfair or oppressive. Dee had the ability to transfer the IRA account to another brokerage firm, but instead chose to open an IRA account with Provident despite the arbitration provision in the Custodial Agreement.

Plaintiffs have not met their burden of showing that the arbitration provision in the Custodial Agreement was procedurally unconscionable.

### ii.    Substantive

In Texas, the general test for substantive unconscionability is "whether, given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 757 (Tex. 2001). The focus is on preventing "oppression and unfair surprise and not of disturbing allocation of risks because of superior bargaining power." *Id.* "But a bargain is not negated because one party may have been in a more advantageous bargaining position." *In re Palm Harbor Homes, Inc.*, 195 S.W.3d at 679; *In re Lyon Fin. Servs., Inc.*, 257 S.W.3d at 233.

Plaintiffs argue that the indemnity provision in the Custodial Agreement makes the arbitration provision substantively unconscionable because it effectively leaves Dee "with no recourse in

21

arbitration against Provident, while not impairing any of Provident's rights at all." (doc. 23 at 29-30.) The indemnity provision provides in relevant part that the accountholder "agree[s] to release, indemnify, and hold [Provident] harmless for any and all claims, actions, proceedings, damages, judgments, liabilities, costs, and expenses (including, without limitation, attorneys' fees) arising from or in connection with this agreement." (doc. 10 at 8.) It is not restricted to claims in arbitration, but is "generally applicable to the contract regardless of forum—whether judicial or arbitral." *Alvarez v. Gryphon Holdco, LLC*, No. SA18CV01298FBESC, 2019 WL 4478889, at *4 (W.D. Tex. Sept. 18, 2019). Their substantive unconscionability argument is therefore directed at the validity of the entire agreement.[12] "Only if the arbitration clause can be attacked on an independent basis can the court decide the dispute; otherwise, general attacks on the agreement are for the arbitrator." *Will–Drill Res, Inc.*, 352 F.3d at 218. Because the substantive unconscionability challenge to the indemnity provision is directed to the entire agreement and not the arbitration agreement itself, it is an issue for an arbitrator to decide. *See id.*

    Because Plaintiffs have not shown why the arbitration agreement should not be enforced, Dee is bound by the terms of the agreement to arbitrate.

**B.    Step Two–Legal Restraints**

    The next step is to determine whether any legal restraints external to the agreement foreclose arbitration of Dee's claims. *See OPE Int'l LP*, 258 F.3d at 445-46. Here, Plaintiffs do not argue that any external legal constraints exist. (*See* doc. 23.) Because no legal restraints external to the Custodial Agreement foreclose arbitration of Dee's claims, she should be compelled to submit her claims to

---

[12]Plaintiffs also argue that the amendment provision is substantively unconscionable because it "purports to give Provident the unilateral right to amend the contract retroactively without notice or consent." (doc. 23 at 30.) As discussed, however, Provident's right to amend the Custodial Agreement is not unilateral because an accountholder has the ability to reject any amendment within thirty days' notice.

arbitration. *See, e.g., Tanoury v. Symphony Serv. Corp.*, No. 3:12-CV-1142-L, 2013 WL 705121, at

*5 (N.D. Tex. Feb. 5, 2013), *adopted by* 2013 WL 706048 (N.D. Tex. Feb. 27, 2013).

## V.  RECOMMENDATION

Provident's motion to compel arbitration should be **DENIED** as to the Estate and **GRANTED**

as to Dee, and the parties should be ordered brief the applicability of the FAA's mandatory stay

provision on the remaining claims in this dispute.[13]

**SO RECOMMENDED** this 22nd day of January, 2020.

*Irma Carrillo Ramirez*

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

 A copy of these findings, conclusions and recommendation shall be served on all parties in the
manner provided by law.  Any party who objects to any part of these findings, conclusions and
recommendation must file specific written objections within 14 days after being served with a copy.
*See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify
the specific finding or recommendation to which objection is made, state the basis for the objection,
and specify the place in the magistrate judge's findings, conclusions and recommendation where the
disputed determination is found.  An objection that merely incorporates by reference or refers to the
briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar
the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge
that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass
v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*Irma Carrillo Ramirez*

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[13]Provident argues that the class action waiver provision in the Custodial Agreement must be enforced and Dee
"should be compelled to arbitrate her claim individually, not as part of a class, in Nevada."  (doc. 9 at 15-16.)  Pending
before the district court, however, is Plaintiffs' motion to certify class.  (*See* doc. 36.)  Because the class action waiver issue
will be addressed when the motion to certify class is considered, it will not be addressed in this recommendation.