IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **DEE NEUKRANZ,** individually and as heir of the ESTATE OF LLOYD NEUKRANZ, and on behalf of a class of similarly situated persons,<br>　　　　Plaintiff,[1]<br>v.<br><br>**CONESTOGA SETTLEMENT SERVICES, LLC; CONESTOGA INTERNATIONAL, LLC; CONESTOGA TRUST SERVICES, LLC; L.L. BRADFORD AND COMPANY, LLC; PROVIDENT TRUST GROUP, LLC; STRATEGIX SOLUTIONS, LTD.; and MICHAEL MCDERMOTT,**<br>　　　　Defendants. | Civil Action No. **3:19-CV-1681-L** |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant Provident Trust Group, LLC's ("Provident") Motion to Compel Arbitration ("Motion" or "Motion to Compel") (Doc. 9), filed August 5, 2019. On January 22, 2020, the Findings, Conclusions and Recommendation of the United States Magistrate Judge ("Report") (Doc. 105) was entered, recommending that the court grant in part and deny in part the Motion to Compel. Specifically, the magistrate judge recommended that the Motion to Compel be granted with respect to the claims asserted by Dee Neukranz ("Dee" or "Dee Neukranz" or "Plaintiff") in her individual capacity and denied with respect to claims asserted by Dee Neukranz in her representative

---

[1] As no class has been certified, the court uses the term "Plaintiff" throughout this opinion, even though the Amended Complaint and the response to the Motion to Compel appear to use the terms "Plaintiff" and "Plaintiffs" interchangeably.

**Memorandum Opinion and Order - Page 1**

capacity on behalf of the Estate of Lloyd W. Neukranz ("the Estate" or "Bill Neukranz").[2]  No recommendation was made as to the putative class claims, as Provident did not seek to compel arbitration of these claims because no class has been certified to date.[3] With respect to any remaining claims, however, the magistrate judge recommended that the court order the parties to brief the applicability of the Federal Arbitration Act's ("FAA") mandatory stay:

> Provident argues that the class action waiver provision in the Custodial Agreement must be enforced and Dee "should be compelled to arbitrate her claim individually, not as part of a class, in Nevada." (doc. 9 at 15-16.) Pending before the district court, however, is Plaintiffs' motion to certify class. (*See* doc. 36.) Because the class action waiver issue will be addressed when the motion to certify class is considered, it will not be addressed in this recommendation.

Report 23 & n.13.  Plaintiff and Provident both filed objections to the Report (Docs. 106, 108) and both responded to the other party's objections.[4]  For the reasons that follow, the court **overrules** both parties' objections.

---

[2] Dee Neukranz is the wife of decedent Lloyd W. Neukranz.  According to the Report entered by the magistrate judge, certain documents submitted by the parties in conjunction with the Motion to Compel indicate that Mr. Neukranz's middle name is "William."  As the parties and magistrate judge refer to Mr. Neukranz as "Bill Neukranz," the court also refers to him herein as "Bill Neukranz" for purposes of consistency.

[3] In its Motion, Provident contends that the waiver provision in the Custodial Agreement containing the arbitration provision at issue must be enforced, such that Dee Neukranz should be compelled to arbitrate her claims individually, as opposed to part of a class action.  The Report indicates that this issue will be taken up by the magistrate judge in addressing the pending motion to certify class. No objections were asserted to the magistrate judge's proposed handling of this issue.  Accordingly, the court does not address the issue in this opinion in ruling on the parties' objections to the Report.

[4] On March 4, 2020, Plaintiff also filed a reply (Doc. 118) in support of her objections without first seeking or obtaining leave of court in violation of the court's August 6, 2019 order (Doc. 11) referring the Motion to Compel.  The court also previously warned, on December 13, 2019, that the continued failure of either party to comply with the district's Local Civil Rules or the court's orders would "result in the noncompliant document or filing being stricken without further notice." Order Striking Pl.'s Mot. for Emergency Relief and Preliminary Injunction (Doc. 78). Accordingly, the court **strikes** and does not consider Plaintiff's reply (Doc. 118).  **Repeated violations by Plaintiff of the district's Local Civil Rules or orders entered in this case will result in additional sanctions against Plaintiff, their attorneys, or both in the form of monetary sanctions, dismissal of Plaintiff's claims, or other sanctions that the court deems appropriate.**

**Memorandum Opinion and Order - Page 2**

## I. Plaintiff's Request for Clarification or, Alternatively, Objections to the Report

Plaintiff's request for clarification focuses on the argument that the arbitration agreement is not enforceable because it is illusory. Alternatively, Plaintiff objects to the Report's handling of this issue. Plaintiff summarizes her contention in this regard as follows:

> [T]he Magistrate Judge's opinion does not clearly and explicitly find that any amendments to the arbitration clause cannot be applied retroactively. Moreover, some parts of the opinion could be read out of context to suggest that the Magistrate [Judge] erroneously found that both requirements of a valid savings clause are met merely because the agreement purportedly requires prior notice, which is only one of the two necessary requirements under Texas law and is a view that has consistently been rejected by the Fifth Circuit. In particular, the conclusion of the Magistrate Judge's analysis of this issue is ambiguous on this point:
>
>> Here, Section 8.14 indicates that any amendment by Provident does not require Dee's express consent and that she will have implicitly consented to an amendment by not objecting to it within thirty days of its notice. **Based on this language**, Provident did not retain the unilateral right to amend the arbitration agreement **at any time with retroactive application**; the amendment can be rejected by the other side within thirty days from the date it is sent. **The accountholder's ability to reject any amendment within a thirty[-]day[-]notice window provides sufficient guarantee of "prior notice and no retroactive application."** *See Henry and Sons Constr. Co., Inc.*, 510 S.W.3d at 694.
>
> Dkt. 105 at 18-19 (citation omitted and bold emphasis added).
>
> Plaintiffs submit these objections to the Magistrate Judge's opinion urging the Court to clarify that the Court has determined that the IRA agreement does not permit retroactive application of amendments to the agreement. Again, this appears to be the implicit determination of the Magistrate Judge, but Plaintiffs seek this clarification in an abundance of caution because, this finding is not clearly articulated in the opinion and, without this finding, the arbitration clause cannot be upheld and instead must be invalidated as illusory.
>
> Notably, Defendant Provident has repeatedly argued in this Court that its amendments to investors' IRA custodial agreement can be applied retroactively. For example, in opposing Plaintiffs' motion to certify the class, Provident repeatedly argued that class members are bound by a putative arbitration clause that Provident

**Memorandum Opinion and Order - Page 3**

> allegedly added unilaterally in January 2019. *See* Dkt. 48 at 8 ("Beginning in January 2019, Conestoga investors with custodian accounts at Provident were subject to an arbitration agreement and class action waiver in the Provident Custodian Agreement."); *id.* at 16 ("As of January 2019, the Custodial Agreement contains both an arbitration provision and a class action waiver."). Provident's contentions are incompatible with the Fifth Circuit caselaw and the Magistrate Judge's analysis and conclusion.
>
> To alleviate any doubt or ambiguity about these findings, Plaintiffs respectfully request that the Court make clear in the final decision that any amendments to the IRA custodial agreement cannot be applied retroactively. Alternatively, if the Court finds that the IRA custodial agreement by its terms allows retroactive amendments (or does not expressly forbid retroactive amendments as required by law), it must overrule the Magistrate Judge and find that the arbitration provision is illusory under well-established Fifth Circuit precedent.

Pl.'s' Obj. 1-3.

Absent from the section of the Report quoted by Plaintiff is the magistrate judge's conclusion that "[t]he arbitration agreement is not void, invalid, or unenforceable as illusory." Report 19. This conclusion is not ambiguous; rather, the magistrate judge's rejection of Plaintiff's contention regarding the unenforceability of the arbitration provision is unequivocally clear from this sentence. In support of this determination, the magistrate judge also rejected Plaintiff's retroactive application argument based on the language in Section 8.14 in finding that this section gives the account holder notice and opportunity to reject any amendment within a certain time frame. This finding is neither clearly erroneous nor contrary to law, and Plaintiff's disagreement with it does not make it unclear. The court, therefore, **denies** Plaintiff's request for clarification and **overrules** her objection to the Report. The court also declines to address any arguments made by the parties with respect to Plaintiff's motion to certify the class, to the extent such arguments have not yet been addressed by the magistrate judge and are not the subject of her January 22, 2020 Report.

**Memorandum Opinion and Order - Page 4**

II.     **Provident's Objections to the Report**

Provident's objections to the Report focus on the claims brought by Dee Neukranz on behalf of the Estate. Provident contends that: (1) the arbitrator, not the court, should determine whether the Estate's claims are subject to an enforceable arbitration agreement; (2) the Estate has no valid claim to the IRA assets such that all of Plaintiff's claims, including the Estate claims, must be referred to arbitration; (3) even if the Estate has a claim that it can assert, Dee Neukranz's claimed capacity to act on behalf of the Estate before being appointed its personal representative and her actions bind the Estate; and (4) the Report fails to address whether Dee Neukranz ratified the arbitration provision on the Estate's behalf after she being appointed as its personal representative.

In assessing whether a claim must be arbitrated, the Fifth Circuit follows a two-step analysis:

> At step one, "the court must determine 'whether the parties entered into *any arbitration agreement at all*.'" *IQ Prod. Co. v. WD-40 Co.*, 871 F.3d 344, 348 (5th Cir. 2017) (quoting *Kubala* [*v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016)]). "This first step is a question of contract formation only—did the parties form a valid agreement to arbitrate some set of claims[?]" *Id.* (citing *Kubala*, 830 F.3d at 201-02). This inquiry is for the court: "Where the very existence of any [arbitration] agreement is disputed, it is for the *courts* to decide at the outset whether an agreement was reached[.]" *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 218 (5th Cir. 2003) (emphasis added); *see also, e.g., DK Joint Venture 1 v. Weyand*, 649 F.3d 310, 317 (5th Cir. 2011) ("[It] is for the courts and not the arbitrator to decide in the first instance . . . whether the parties entered into an arbitration agreement in the first place."). Only if we answer "yes" at the first step do we proceed to the second. At step two, we engage in a "limited" inquiry: "[W]hether the [parties'] agreement contains a valid delegation clause." *IQ Prod.*, 871 F.3d at 348 (citing *Kubala*, 830 F.3d at 202). We ask only whether there is "'clear and unmistakable' evidence" that the parties intended to arbitrate. *Id.* If so, a "motion to compel arbitration should be granted in almost all cases." *Id.* (quoting *Kubala*, 830 F.3d at 202).

*Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508, 514 (5th Cir. 2019) (footnote omitted). The court in *Lloyd's Syndicate 457* went on to note that the "strong federal policy favoring arbitration" that applies in interpreting an arbitration delegation clause "does not apply to the

**Memorandum Opinion and Order - Page 5**

determination [in the first step] of whether there is a valid agreement to arbitrate between the parties." *Id.* at 516 n.5 (citations and internal quotation marks omitted).

Provident contends that the magistrate judge erred in "addressing the scope of the Arbitration Provision, despite the existence of a clear and unmistakable delegation clause." Provident Obj. 8. Provident further asserts that the magistrate judge ignored binding precedent in failing to enforce the delegation clause, even though Plaintiff did not challenge the existence of the delegation clause in response to the Motion to Compel, and the magistrate judge did not determine that the delegation clause was deficient in any way. *Id.* at 9. According to Provident, once the magistrate judge determined that there was a valid agreement to arbitrate between it and Dee Neukranz, the issue of whether all of Plaintiff's claims, including those brought on behalf of the Estate, fall within scope of the arbitration provision is a question for the arbitrator to decide, not the court. Provident argues that this is so with respect to the claims brought by Dee Neukranz in her individual capacity, as well as those brought on behalf of the Estate because, "[w]hile [Dee Neukranz] purports to wear two hats, [she] is the only Plaintiff in this case." *Id.* Provident, therefore, contends that the magistrate judge erred in determining "that only [Dee Neukranz's] individual claims f[a]ll within the Arbitration Provision's scope and that [her] claims on behalf of her husband's Estate somehow d[o] not." *Id.*

Provident misapprehends Fifth Circuit precedent. Before reaching Provident's argument regarding the effect, if any, of the delegation clause on the Estate's claims against Provident, the magistrate judge was required to determine whether a valid arbitration agreement exists between the parties. The magistrate judge correctly determined that the parties, for purposes of this analysis, are Provident *and the Estate or Bill Neukranz*, not Provident and Dee Neukranz. That Dee Neukranz is bound, in her individual capacity as a signatory to the Custodial Agreement containing the arbitration

**Memorandum Opinion and Order - Page 6**

provision, to arbitrate claims between her and Provident is quite beside the point, as the agreement between Dee Neukranz and Provident to arbitrate disputes between them does not extend to the Estate or Bill Neukranz absent some theory to bind these non-signatories. Thus, the magistrate judge correctly addressed first whether a valid arbitration agreement exists between Provident, as a signatory to the Custodial Agreement containing the arbitration provision, and the Estate or Bill Neukranz, as non-signatories. *See Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 530 (5th Cir. 2019) (citing *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 633 (Tex. 2018), for the proposition that "a court must address 'whether a valid agreement to arbitrate exists between [a signatory and non-signatory] before any issue may be referred to arbitration.'").

The magistrate judge did not reach the delegation issue because she decided, as required by Fifth Circuit precedent, that there was no valid arbitration agreement between Provident and the Estate or Bill Neukranz. The magistrate judge noted that "Texas and federal law recognize six theories under which a court could compel a non-signatory to arbitrate," including "(1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing/alter ego, (5) estoppel, and (6) third-party beneficiary," but "Provident's motion to compel arbitration does not invoke or address any of these theories in support of its motion." Report 15 & n.8. The magistrate judge also noted that Provident raised ratification and notice theories in an attempt to extend the arbitration agreement to the Estate and Bill Neukranz, but these arguments were raised for the first time in its reply to the Motion to Compel. The magistrate judge reasoned that, even if considered, these improperly raised arguments would not affect her recommendation because Provident failed to present evidence sufficient to demonstrate an enforceable agreement to arbitrate between it and Bill Neukranz or the Estate. *See*

Report 12 n.7; 16 n.9. Provident's contention that the magistrate judge did not consider its ratification argument, therefore, mischaracterizes the Report.

Provident's second and third objections are similar to its first objection in that it contends that Dee Neukranz's agreement to arbitration in her "individual capacity" applies to all claims brought by her in this action, whether on her own behalf in her individual capacity or on behalf of the Estate in her representative capacity. With respect to its second objection, Provident contends:

> [T]he Magistrate's recommendation . . . artificially separates [Dee Neukranz's] claims brought "individually" from those that [Dee Neukranz] has brought on the Estate's behalf, first as the Estate's heir, and now as the Estate's personal representative. **The Estate itself has no claim to the Conestoga assets at issue.**
> . . .
>
> [T]he issues of which claims belong to the Estate, whether the Estate consented to arbitration, and whether [Dee Neukranz] acted on the Estate's behalf are a red herring. The Conestoga assets transferred from [Bill] Neukranz to [Dee Neukranz]—they have never belonged to [Bill] Neukranz's Estate. **The Estate's assent to the Arbitration Provision is irrelevant. While [Dee Neukranz] argued that "[t]he Estate cannot be compelled to arbitrate because Bill Neukranz never agreed to arbitrate any disputes with Provident, and no person acting on behalf of Bill's Estate ever agreed to arbitrate the Estate's claims," this argument misses the central point and uncontested fact that the Estate has no interest in the Conestoga assets held in [Bill] Neukranz's IRA and then transferred to [Dee Neukranz] upon [Bill] Neukranz's death**.

Provident Obj. 10-11 (citations omitted and emphasis added).

Regarding its third objection, Provident likewise contends:

> that **the Estate has no assets at issue here and thus no claim to assert**. However, even if the Court were to conclude that the Estate possesses a claim, Provident objects to the Magistrate's recommendation because the Magistrate erroneously concluded that [Dee Neukranz] could not have bound the Estate to the Arbitration Provision before she was designated personal representative on August 30, 2019. The Magistrate ignored that [Dee Neukranz] had acted on the Estate's behalf well before being named as the Estate's personal representative. When [Dee Neukranz] filed suit, she did so as "an heir to the Neukranz Estate" and she "assert[ed] survival claims on behalf of the Neukranz Estate." [Dee Neukranz] had not yet been named as the

**Memorandum Opinion and Order - Page 8**

> Estate's personal representative. Instead, she brought her claims "individually" and as an "heir" to the Estate.
>
> The Magistrate, however, found it "significant" that [Dee Neukranz] "was not formally appointed by the probate court as executrix" until August 30, 2019, suggesting that [Dee Neukranz] lacked capacity to act on the Estate's behalf before her appointment as personal representative. The Magistrate reasoned: "The executor's authority and duty to act on behalf of an estate is vested upon his appointment by the probate court," . . . and "an executrix has no power to act on behalf of the estate until the will is probated or is otherwise qualified as directed by statute." This is inaccurate.
>
> While generally only an estate's personal representative has capacity to bring a survivor action, heirs may be entitled to sue on the estate's behalf if no administration is pending and none is necessary. . . . By filing the lawsuit and pleading that she had authority as an heir and that no administration was pending and none was necessary, Plaintiff conceded that she had capacity to act on the Estate's behalf before she was named personal representative.
>
> Provident does not seek to bind a non-signatory to an arbitration agreement. In contrast to the cases the Magistrate cited, **Plaintiff undeniably signed the Arbitration Provision**.
> . . .
>
> Plaintiff signed the Custodial Agreement and transferred the assets into her account. Plaintiff then filed this lawsuit as the Estate's heir. [Dee Neukranz's] actions on the Estate's behalf relate back to the time before she was appointed as personal representative. Having acted on the Estate's behalf, she cannot now equitably claim that she lacked capacity to bind the Estate simply because it no longer suits her desires.

Provident Obj. 12-14 (citations omitted and emphasis added).

Provident's contention that the Estate does not have a valid claim to the IRA or Conestoga assets in Dee Neukranz's account or "has no assets at issue here and thus no claim to assert" misses the mark and is entirely irrelevant to the court's determination of whether a valid arbitration agreement exists. *Id.* at 12.  It also inconsistent with and undermines Provident's argument that the arbitration agreement signed by Dee Neukranz, when she opened the IRA, binds the Estate. Provident's arguments regarding Dee Neukranz's capacity or standing to bring claims on behalf of

**Memorandum Opinion and Order - Page 9**

the Estate are similarly irrelevant. Provident correctly indicates, as did the magistrate judge, that, under Texas law, a decedent's estate "is not a legal entity and may not properly sue or be sued as such." *Belt v. Oppenheimer Blend Harrison & Tate*, 192 S.W.3d 780, 786-87 (Tex. 2006) (citing *Austin Nursing Ctr., Inc. v. Lovato*, 171 S. W.3 d 845, 850 (Tex. 2005)). Instead, certain individuals like Dee Neukranz possess capacity to bring a claim on the estate's behalf as a representative. *Id.* In an action involving such claims, the estate "stands in the shoes" of the decedent, not the estate's representative. *Belt*, 192 S.W.3d at 786-87. The estate, therefore, may be "in privity" with parties that entered into legal relationships with the decedent prior to his or her death. *Id.*

In this case, the Estate stands in the shoes of decedent Bill Neukranz, not the Estate's representative Dee Neukranz. *See id.* Thus, in determining whether a valid arbitration agreement exists, the issue is whether the Estate or Bill Neukranz entered into a valid arbitration agreement with Provident, not whether Dee Neukranz entered a valid arbitration agreement with Provident, unless she did so on behalf of the Estate. Dee Neukranz's conduct in filing this lawsuit on June 24, 2019, without more, does not satisfy Provident's burden of establishing that she was acting on behalf of the Estate (as the Estate's agent) when she executed a Traditional Individual Retirement Account ("IRA") Application in her individual capacity to open her own personal IRA with Provident on April 7, 2019. It merely suggests that Dee Neukranz had the standing to bring suit on behalf of the Estate as the representative of the Estate. Provident also offered no evidence in support its Motion to Compel to show that it entered any contract containing a valid arbitration agreement with Bill Neukranz before his death, and the court agrees with the magistrate judge that neither the IRA Application signed by Dee Neukranz in her individual capacity nor the Custodial Agreement

referenced in the IRA Application indicates an intent by Dee Neukranz to bind the Estate or her legal authority to do so.

Accordingly, for all of these reasons, the court **overrules** Provident's objections to the Report.

### III. Conclusion

Having considered the Motion to Compel, the parties' briefs, evidence, record, and Report, and having conducted a de novo review of that portion of the Report to which objections were made, the court determines that the findings and conclusions of the magistrate judge, as **supplemented** by this opinion, are correct. The court, therefore, **accepts**, **as supplemented**, the magistrate judge's findings and conclusions; **overrules** Plaintiff's and Provident's objections (Docs. 106, 108); and **grants in part and denies in part** Provident's Motion to Compel Arbitration (Doc. 9) as recommended by the magistrate judge. The court **rejects as moot** the magistrate judge's remaining recommendation that the parties submit briefing as to whether Plaintiff's remaining claims against Provident should be stayed pending arbitration of Dee Neukranz's individual claims against Provident, as it appears briefing on this issue has been completed. Accordingly, all claims asserted by Dee Neukranz, in her individual capacity, against Provident **shall be arbitrated** in accordance with the arbitration provision contained in the Custodial Agreement. After receiving the magistrate judge's recommendation as to whether the claims at issue in the Motion to Compel or any putative class claims should be stayed pending resolution of the arbitration, the court will enter a separate order addressing this issue.

**It is so ordered** this 28th day of May, 2020.

                                                Sam A. Lindsay
                                                United States District Judge