IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DEE NEUKRANZ, individually and as heir of the Estate of Lloyd Neukranz, and on behalf of a class of similarly situated persons, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:19-CV-1681-L-BH |
| CONESTOGA SETTLEMENT SERVICES, LLC; CONESTOGA INTERNATIONAL, LLC; CONESTOGA TRUST SERVICES, LLC; L.L. BRADFORD AND COMPANY, LLC; PROVIDENT TRUST GROUP, LLC; STRATEGIX SOLUTIONS, LTD.; and MICHAEL MCDERMOTT, | § § § § § § § § | |
| Defendants. | § | Referred to U.S. Magistrate Judge[1] |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Before the Court are *Defendants Conestoga Settlement Services, LLC; Conestoga International, LLC; Conestoga Trust Services, LLC; and Michael McDermott's Motion to Stay Pending Arbitration and Supporting Brief* (doc. 126), *Defendant Provident Trust Group, LLC's Response to Order Inviting Supplemental Briefing on Disposition of Arbitrable Claims* (doc. 125), and *Plaintiffs' Brief in Response to the Court's Order Regarding Whether to Stay or Dismiss Pending Arbitration* (doc. 127), all filed on April 29, 2020. Based on the relevant filings and applicable law, the motion for stay should be **GRANTED in part**.

**I.  BACKGROUND**

Dee Neukranz, both individually (Dee) and in her capacity as heir of the Estate of Lloyd Neukranz (Estate), brings this putative class action on behalf of a class of similarly situated persons

---

[1] By order filed November 1, 2019, this case was referred for full case management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions. (*See* doc. 52.)

(collectively Plaintiffs) against Conestoga Settlement Services, LLC, Conestoga International, LLC, Conestoga Trust Services, LLC (Conestoga Trust), and Michael McDermott (collectively Conestoga Entities); L.L. Bradford and Company, LLC (Bradford); Provident Trust Group, LLC (Provident); and Strategix Solutions, Ltd. (Strategix). (docs. 1-4, 21.)[2]

A.   **Factual Background**

Plaintiffs allege that Conestoga Entities acquired life insurance policies on non-party individuals to be held in a trust, and then marketed and sold fractional interests in life settlement contracts on those policies to investors. (doc. 21 at 4.) The purchaser of a life insurance policy became the new beneficiary and had the right to collect the benefits payable upon the death of the insured, but had to also pay policy premiums until maturity or the policy would lapse. (*Id.* at 8.) Because of this, the two variables to be considered when calculating the future cost of maintaining the policy were the annual premiums that would be owed on the policy and the estimated life expectancy of the insured. (*Id.*) Conestoga Entities allegedly partnered with Provident to market and sell the fractional interests in life settlements to investors, and for Provident to oversee and manage the holding trust as its escrow agent. (*Id.* at 7.) Bradford was responsible for accounting, financial, and auditing services in relation to the life settlement investments. (*Id.*) Strategix eventually took over Provident's role as escrow agent and Bradford's role as auditor. (*Id.*)[3]

In October 2013, Lloyd William Neukranz, Dee's husband, opened a traditional Individual Retirement Account (IRA) with Provident and transferred $770,000 to invest in eleven Conestoga life

---

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

[3] As reflected in the state court records attached to Provident's notice of removal, Plaintiffs had served Bradford and Strategix with the original petition prior to removal. (*See* doc. 1-3.) Neither Bradford nor Strategix has appeared in this action, however.

settlement contracts. (doc. 21 at 36.) He had relied on written sales materials prepared by the defendants, which represented that premium costs would remain fixed, and that sufficient funds would be held in escrow accounts to cover these premium costs. (*Id.* at 40-41.) The premium payments have exceeded the amounts represented to him, however, and they have been due earlier than represented in the written sales materials, and the escrow reserve accounts either never existed or were underfunded. (*Id.*) Before Dee's husband's death on February 23, 2019, he had paid annual premiums in 2017 and 2018 that were $21,000 more than what was represented in the written sales materials from the defendants. (*Id.* at 41.) In March 2019, a month after Dee's husband passed away, she paid almost $10,000 from her personal savings on the premium payment for one of the policies. (*Id.*)

On April 7, 2019, Dee executed an agreement to open her own personal IRA with Provident. (doc. 10 at 24-27.) It stated, in relevant part, that "[a]ny dispute, claim or controversy arising out of, in connection with or relating to the performance of this agreement or its termination, including the determination of the scope or applicability of this agreement to arbitrate, will be resolved by binding arbitration before a single arbitrator in the state of our principal place of business, in accordance with the Commercial Arbitration Rules of the American Arbitration Association." (*Id.* at 10).

Plaintiffs' amended complaint alleges that the Conestoga Entities, Provident, and Bradford "misled investors into believing, among other things, that the premiums on the underlying life insurance policies were fixed premiums, when, in fact these Defendants knew that the premiums would sky rocket over time as each insured person grew older." (doc. 21 at 4.) It alleges that these defendants "also falsely represented and promised to investors that: (1) they would establish an escrow account for each underlying life insurance policy to pay the future premiums owed on that policy, (2) that each escrow account would be sufficiently funded in advance to pay the future premiums over the

3

expected life of the insured person for that policy *plus* an additional grace period beyond the expected life of the insured; [(3)] that the escrow accounts would be funded from a portion of purchase-price money received from the investors; (4) that Provident would serve as the escrow agent and service the escrow premium reserve accounts for the benefit of the investors throughout the life of the investments; (5) that Bradford would audit and review Provident's escrow agency services as a further 'check and balance' and to ensure the integrity of the investments; and (6) that the fees and commissions that they would collect from investors would not exceed certain promised amounts." (*Id.* at 4-5 (emphasis original).)

The Estate asserts claims for common law fraud against the Conestoga Entities, Provident, and Bradford, alleging that they made misrepresentations of fact and false promises to Dee's husband regarding certain facts related to the marketing and sale of the fractional interests in the life settlement contracts, and that these representations were made to him by their sales agents and their written sales materials. (*Id.* at 44-50.) It also asserts a fraud by non-disclosure claim against the Conestoga Entities, Provident, and Bradford, alleging that they concealed from or failed to disclose material facts to Dee's husband regarding the investments. (*Id.* at 50-52.)

Plaintiffs assert civil conspiracy claims against all the defendants, alleging that they had conspired to deceive and defraud investors like Dee's husband "into purchasing fractional interest in life settlement contracts and into subsequently paying additional premium payments that were not disclosed or owed," or had conspired to "sell and maintain fractional interests in life settlements through the use of false and misleading representations and material omissions and to conceal discovery of the fraudulent conduct." (*Id.* at 53.) They also assert claims for breach of fiduciary duty against Conestoga Trust, Provident, Bradford, and Strategix, alleging that they were fiduciaries and

4

owed Dee's husband a duty of honesty, loyalty, and full disclosures, and that they were required to always put his interest ahead of their own "in all matters falling within the scope of their relationship." (*Id.* at 58.)  They allegedly breached these duties by "participating in a scheme to defraud Plaintiffs and the class members, making false representations, spending funds from the escrow accounts for purposes (and in amounts) that were not disclosed to Plaintiffs and/or authorized by Plaintiffs, paying premiums with money that belonged to Plaintiffs and was not owed by Plaintiffs, improperly managing escrow funds, failing to disclose conflicts of interest and other material facts discussed above, engaging in self-dealing, paying themselves excessive and undisclosed commissions, and assisting in a cover-up to keep Plaintiffs from discovering the scheme." (*Id.*)  Plaintiffs also assert claims against the Conestoga Entities, Provident, Bradford, and Strategix for common law conversion, and for violating the Texas Theft Liability Act 31.03, Texas Civil Practice & Remedies Code §§ 134.002-003, *et seq.* (TTLA).  (*Id.* at 58-60.)  They allege that these defendants intentionally and wrongfully converted "money belonging to the Estate . . . to pay undisclosed premiums, insurance costs, and commissions and fees that were contrary to the Written Sales Materials and never authorized by or disclosed to investors," and that they intentionally and wrongfully converted "the investment money and IRA funds to pay themselves inflated commissions, fees, and other consideration that was contrary to the Written Sales Materials and never authorized by or disclosed to Plaintiffs." (*Id.* at 59-60.)  Plaintiffs seek monetary damages, financial accounting, and other declaratory relief.  (*Id.* at 60-64.)

**B.      Procedural History**

On August 5, 2019, Provident moved to compel arbitration based on the arbitration agreement between it and Dee.  (doc. 9.)  On May 28, 2020, the court partially granted the motion and ordered

5

that Dee's individual claims against Provident be submitted to arbitration because there was a valid arbitration agreement between Dee and Provident, and it provided that the arbitrator would determine whether claims are within the scope of arbitration. (*See* docs. 105, 132.) It denied the request to compel arbitration of the Estate's claims against Provident. (*See id.*)

By order dated April 15, 2020 (doc. 121), the parties were ordered to file supplemental briefs regarding whether this action should be stayed pending the outcome of arbitration or dismissed with prejudice. Plaintiffs and Provident filed their supplemental briefs on April 29, 2020. (docs. 125, 127.) On the same day, the Conestoga Entities moved to stay pending arbitration, arguing that the entire action should be stayed under 9 U.S.C. § 3, or under the Court's inherent power. (doc. 126.) Plaintiffs responded to the motion on May 20, 2020, and the Conestoga Entities replied on June 11, 2020. (docs. 131, 135.)

## II. STAY PENDING ARBITRATION

Provident and the Conestoga Entities seek to stay this case pending arbitration of Dee's individual claims against Provident. (*See* docs. 125, 126, 128.)[4]

### A. Legal Standard

The Federal Arbitration Act (FAA) governs the enforcement of arbitration agreements. *See* 9 U.S.C. §§ 2, 3. Section 3 of the FAA requires that upon application of one of the parties, the court shall stay the trial of the action until the arbitration is complete if there exists a valid and enforceable arbitration clause. *See id.* § 3. A stay is mandatory upon a showing that the opposing party has commenced suit "upon any issue referable to arbitration under an agreement in writing for such arbitration." *Id.*; *accord Mun. Energy Agency of Miss. v. Big Rivers Elec. Corp.*, 804 F.2d 338, 342

---

[4]Provident filed a notice of joinder to the Conestoga Entities' motion to stay pending arbitration on May 1, 2020. (*See* doc. 128.)

(5th Cir. 1986). While the FAA's mandatory stay provision normally only applies to the signatories of an arbitration agreement, the Fifth Circuit has recognized that "exceptional circumstances" may exist to warrant an exception to this general rule. *See Adams v. Georgia Gulf Corp.*, 237 F.3d 538, 540 (5th Cir. 2001) (citing *Harvey v. Joyce*, 199 F.3d 790 (5th Cir. 2000) and *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324 (5th Cir. 1999)). Subsequently, the Fifth Circuit identified three factors that courts should consider in determining the applicability of the mandatory stay provision to nonsignatories:

> 1) the arbitrated and litigated disputes must involve the same operative facts;
> 2) the claims asserted in the arbitration and litigation are "inherently inseparable"; and
> 3) the litigation must have a "critical impact" on the arbitration.

*Rainier DSC 1, L.L.C. v. Rainier Capital Mgmt., L.P.*, 828 F.3d 356, 360 (5th Cir. 2016) (citing *Waste Management v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 343 (5th Cir. 2004)). "The question is not ultimately one of weighing potential harm to the interests of the non-signatory, but of determining whether proceeding with litigation will destroy the signatories' right to a meaningful arbitration." *Waste Management*, 372 F.3d at 343.

Although the parties have briefed the appropriateness of a mandatory stay under § 3, as noted, the scope issue has been referred to the arbitrator, and it has not yet been determined what claims asserted by Dee, if any, are subject to arbitration. Without this determination, the Court cannot decide whether the arbitrated disputes involve the same operative facts as the litigated disputes, and whether the claims in the disputes are "inherently inseparable." It therefore cannot determine whether the mandatory stay provision applies.

**B.   Discretionary Stay**

Even if a non-signatory's request for stay is not warranted under § 3, the case may still be

stayed "in accordance with the court's inherent authority." *Citgo Petroleum Corp. v. M/T Bow Fighter*, No. H-07-2950, 2009 WL 960080, at *5 (S.D. Tex. Apr. 7, 2009). The district court's authority to issue a discretionary stay of litigation pending arbitration, even as to claims between non-arbitrating parties, lies in the court's inherent power to control its docket. *See Complaint of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 755 (5th Cir. 1993) (citing *Moses H. Cone Mem 'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n. 23 (1983)).

The factors for granting a non-signatory's request for mandatory stay under the FAA are also considered in determining whether a discretionary stay is appropriate. *See, e.g., Mosaic Underwriting Serv., Inc. v. Moncla Marine Operations, L.L.C.*, No. 12-2183, 2013 WL 2903083, at *8 (E.D. La. June 12, 2013); *see also Broussard v. First Tower Loan, LLC*, No. CV 15-1161, 2016 WL 879995, at *6 (E.D. La. Mar. 8, 2016) ("Several courts in this circuit have relied on the factors discussed in *Waste Management* to determine whether a discretionary stay is appropriate.") (collecting cases). If the facts and claims underlying the arbitration and litigation "significantly overlap," a discretionary stay pending arbitration is appropriate, "[e]ven if the operative facts are not identical and the claims are not 'inherently inseparable.'" *Suzlon Infrastructure, Ltd. v. Pulk*, No. CIV. A. H-09-2206, 2010 WL 3540951, at *8 (S.D. Tex. Sept. 10, 2010); *see also Jones v. Singing River Health Sys.*, No. 1:14CV447-LG-RHW, 2016 WL 3351291, at *2 (S.D. Miss. June 15, 2016) ("District courts within the Fifth Circuit have held that it is not absolutely necessary that the claims be inherently inseparable in order to justify a discretionary stay; significant overlap of claims is sufficient.") (citations omitted); *Jones Walker, LLP v. Petaquilla Minerals, Ltd.*, No. 14-1203, 2015 WL 3772670, at *5 (E.D. La. June 17, 2015) ("A district court may exercise its discretion to impose a stay pending arbitration, even if the operative facts are not identical and the claims are not inherently inseparable, as long as the facts

and claims forming the basis for the arbitration and litigation proceedings significantly overlap.") (quotations and citations omitted).

Plaintiffs argue that a discretionary stay of the litigation is not warranted because there is no factual, conceptual, or legal overlap between Dee's arbitrable claims against Provident and this litigation. (doc. 127 at 10-11, 15.) They contend that "Dee's individual claims focus on conduct that occurred after [her husband's] death in February 2019," while the Estate's claims "focus on the Defendants' misrepresentations and omissions related to the Conestoga investments at the time of sale, the undisclosed relationships and conflicts of interest among various Defendants, and Provident's myriad [of] breaches with respect to its fiduciary duties as the escrow agent for the Conestoga investments." (*Id.* at 11.) They also contend that the arbitrable claims "have absolutely nothing to do with the Conestoga Defendants" because they "were not involved in the performance or termination of Dee's IRA custodial agreement in 2019" and "only claims arising out of or related to the performance or termination of the IRA custodial agreement are arbitrable." (doc. 131 at 15.)

Even assuming for purposes of this motion only that the *Waste Management* factors do not require a mandatory stay under § 3, they do argue in favor of a discretionary stay. Plaintiffs assert the same claims against Provident and the Conestoga Entities for civil conspiracy, breach of fiduciary duty, conversion, and TTLA violations. (*See* doc. 21.) While Plaintiffs argue that Dee's individual claims against Provident are merely "tangentially related as a factual matter" to the Estate's claims against Provident (doc. 127 at 10), the amended complaint does not identify facts supporting the elements of Dee's individual claims separate from those supporting the Estate's claims; it instead alleges that Dee "has been harmed at least to the extent she has been required (and may be required in the future) to pay premium payments from her own personal savings after [her husband] passed

9

away in February 2019" (doc. 21 at 55, 58-60).

Similarly, the amended complaint does not distinguish between Dee's and the Estate's claims against the Conestoga Entities other than Dee's alleged harm. (*See* doc. 21 at 55, 58-60.) Central to all of Plaintiffs' claims is Dee's husband's investment in life settlement contracts. (*See* doc. 21.) Dee's individual claims against Provident are based on the same life insurance policies and contracts, life settlement investments, escrow accounts, written sales materials, and civil conspiracy to defraud investors that underlie the Estate's claims against Provident and Plaintiffs' claims against the Conestoga Entities. The "close relationship" between the facts supporting all of the claims weighs in favor of a stay. *See Broussard v. First Tower Loan, LLC*, 150 F. Supp.3d 709, 728 (E.D. La. 2015) (quoting *Suzlon Infrastructure, Ltd.*, 2010 WL 3540951, at *8).

Plaintiffs maintain that Dee's arbitrable claims "necessarily concern issues related to the performance or termination of the IRA agreement that Dee executed in the Spring of 2019" and have no "bear[ing] on the Estate's claims that arose years earlier." (doc. 127 at 11.) They also contend that the arbitrable claims "have absolutely nothing to do with the Conestoga Defendants" because they "were not involved in the performance or termination of Dee's IRA custodial agreement in 2019" and "only claims arising out of or related to the performance or termination of the IRA custodial agreement are arbitrable." (doc. 21 at 15.) As Plaintiffs acknowledge, however, the determination of whether any of Dee's individual claims against Provident are within the scope of arbitration has been delegated to the arbitrator, and no determination has been made on what claims, if any, are arbitrable. (*See* docs. 105, 132.) Because the arbitrator may find the arbitration clause broad enough to cover claims involving all aspects of the relationship between Dee and Provident, the extent of overlap of facts and claims could be significant. *See Naru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.*, 138 F.3d

10

160, 164-65 (5th Cir. 1998) (finding arbitration clause covering any disputes "arising out of or in connection with" demonstrates intent by the parties to arbitrate "all aspects of the relationship") (citation omitted). At minimum, the first two *Waste Management* factors weigh in favor of a discretionary stay. *See Suzlon Infrastructure, Ltd.*, 2010 WL 3540951, at *8 ("Even if the operative facts are not identical and the claims are not 'inherently inseparable,' the facts and claims significantly overlap.")

The likely impact of this litigation on the arbitration, the third *Waste Management* factor, provides further support for a discretionary stay. *See Waste Management*, 372 F.3d at 345 (explaining that "[g]iven the binding effect of a federal judgment," proceeding with litigation would "substantially impact" pending arbitration of factually similar claims because "[the] arbitrator would necessarily be strongly influenced to follow the court's determination"). At present, the facts and claims in the litigation and arbitration appear to significantly overlap, and the same witnesses and evidence will likely be necessary to prove the claims asserted in the arbitration; particularly regarding each defendant's role in the alleged conspiracy to defraud investors and the amount of funds the defendants had allegedly converted from Plaintiffs. *See, e.g., Citgo Petro. Corp.*, 2009 WL 960080, at *7 (issuing a stay under the court's inherent authority because the claims in the litigation arose "from the same incident between two pairs of the same three parties" in the arbitration"). Although Plaintiffs argue that the litigation will not have a critical impact on Provident's right to arbitrate because "Provident is not bound in the arbitration by the results of Dee's litigation with the Conestoga Defendants, and the Provident arbitration would involve several issues not relevant to the litigation," a final decision has not been reached on the scope of claims subject to arbitration. (doc. 131 at 15-16.) Because the arbitrator has not determined what claims, if any, are arbitrable, allowing the case to proceed before

11

this determination runs the risk of conflicting decisions on common issues of law and fact. *See Qualls v. EOG Res., Inc.*, No. CV H-18-666, 2018 WL 2317718, at *2 (S.D. Tex. May 22, 2018) (finding discretionary stay appropriate when "the nonarbitrable claims will require the resolution of issues that will be resolved during arbitration"). "That risk provides additional reason to stay this litigation." *Suzlon Infrastructure, Ltd.*, 2010 WL 3540951, at *8 (granting discretionary stay after finding significant overlap of facts and claims even though the litigation involved claims that covered a different period of time than the arbitrated claims); *see, e.g., Med–Im Dev., Inc.*, 2008 WL 901489, at * 9 (granting a discretionary stay, in part, because the litigation could impact the parties' arbitration rights when the parties could seek discovery in litigation that was beyond discovery available in arbitration). Considering the *Waste Management* factors, a discretionary stay of Plaintiffs' claims against Provident under the court's inherent power to effectively manage its docket is warranted. *See Suzlon Infrastructure, Ltd.*, 2010 WL 3540951, at *11 ("[E]ven if the factors set out in *Waste Management* do not require a stay under section 3, those factors, on the present record, support a discretionary stay.").

Because all of Dee's individual claims against Provident have been submitted to arbitration under the parties' arbitration agreement, and the determination of the scope of arbitrable claims was delegated to the arbitrator, a discretionary stay of all claims should be entered pending resolution of the scope issue in the arbitration between Dee and Provident.[5]

### III. RECOMMENDATION

The Conestoga Entities' motion to stay pending arbitration should be **GRANTED in part,** and a discretionary stay should be entered that stays all further proceedings in this case pending resolution

---

[5] Because it has been recommended that the entire action be stayed, Provident's alternative request to dismiss Dee's individual claims need not be addressed. (*See* doc. 125 at 3-4.)

12

of the scope of arbitration issue in the arbitration between Dee and Provident.

**SO RECOMMENDED** this 14th day of July, 2020.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE