IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **DEE NEUKRANZ, ESTATE OF LLOYD NEUKRANZ, KENNETH LANE, et al., on behalf of themselves and similarly situated persons,** | § § § § § | |
| | § | |
| *Plaintiffs*, | § | |
| v. | § | **Case No. 3:19-cv-01681-L** |
| | § | |
| **CONESTOGA SETTLEMENT SERVICES, LLC; CONESTOGA INTERNATIONAL, LLC; CONESTOGA TRUST SERVICES, LLC; L.L. BRADFORD AND COMPANY, LLC; PROVIDENT TRUST GROUP, LLC; JAMES SETTLEMENTS SERVICES, INC.; and MICHAEL MCDERMOTT,** | § § § § § § § § § § § | |
| *Defendants*. | | |

**DEFENDANTS CONESTOGA SETTLEMENT SERVICES, LLC,
CONESTOGA INTERNATIONAL, LLC; CONESTOGA TRUST
SERVICES, LLC; AND MICHAEL MCDERMOTT'S
RESPONSE TO PLAINTIFFS' OBJECTIONS TO THE RECOMMENDATION ON
<u>CONESTOGA DEFENDANTS' MOTION TO DISMISS (DOC. 246)</u>**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES……...…….....………………………………………...…iii

I.     STATEMENT OF THE CASE ………………….…………………………………..1

II.    STANDARD OF REVIEW……………….…………………………………………6

III.   ALL FRAUD-BASED CLAIMS SHOULD BE DISMISSED………………………...6

      A.    The Motion to Dismiss all fraud-based claims should be granted
           for the reasons set forth by the Magistrate Judge………………….…………..6

           1.    Claims sounding in fraud should be dismissed because Plaintiffs
                must satisfy Rule 9(b) and PLSRA as to each Defendant but Plaintiffs
                rely on "group pleading."…………………………………………………7

           2.    The conspiracy claims should be dismissed…………………..……..14

           3.    The fiduciary duty claim should be dismissed………………..……..14

      B.    Alternatively, the Court should grant the Motion to Dismiss on grounds
           not reached by the Magistrate Judge…………………………..……………14

           1.    No class has been certified and each Plaintiff must individually
                satisfy Rule 9(b)…………………………………………….…………14

           2.    Particularly glaring is Plaintiffs' failure to adequately plead
                justifiable reliance on any specific misrepresentation or omission……...16

           3.    All fraud-based claims should be dismissed for additional reasons……..22

IV.   CONCLUSION AND PRAYER………………………………………..………...24

# TABLE OF AUTHORITIES

**Cases**

*A.I.A. Holds., S.A. v. Lehman Bros., Inc.*, 1998 WL 159059 (S.D.N.Y. Apr. 1, 1998) ........... 2, 20

*Abrams v. Baker Hughes Inc*., 292 F.3d 424 (5th Cir. 2002) ....................................... 11

*Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467 (7th Cir. 1999) ....................... 18, 27

*Admin. Comm. of the Am. Excelsior Company Employee Stock Ownership Tr. v. GreatBanc Tr. Co*., 2015 WL 5775736 (N.D. Tex. Sept. 30, 2015)......................... 23

*Alaska Elec. Pension Fund v. Asar*, 768 Fed. Appx. 175 (5th Cir. 2019) .................................... 14

*Anderson v. McGrath*, 2013 WL 1249154 (D. Ariz. Mar. 26, 2013) ..................................... 19, 27

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ........................................................................ 7

*Austin v. Bank of New York Mellon as Tr. for CWABS, Inc. Asset Backed Certificates, Series 2003-BC4*, 2020 WL 806953 (N.D. Tex. Feb. 3, 2020) ................................. 23

*Baker v. Great N. Energy, Inc.,* 64 F. Supp. 3d 965 (N.D. Tex. 2014) ....................................... 30

*Barrow v. Greenville Indep. Sch. Dist*., 202 F.R.D. 480 (N.D. Tex. 2001)................................... 17

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................... 6, 22

*BP Am. Prod. Co. v. Zaffirini,* 419 S.W.3d 485 (Tex. App.--San Antonio 2013, pet. denied) .... 21

*Brown v. Protective Life Ins. Co*., 353 F.3d 405 (5th Cir. 2003)........................................... 18, 19

*Busch v. Basic Organics, Inc*., No. CIVA 3:06CV2261 L, 2007 WL 603385 (N.D. Tex. Feb. 27, 2007).................................................................................... 8

*Carto Properties, LLC v. Briar Capital, L.P*., 2018 WL 827558 (Tex. App.--Houston [1st Dist.] Feb. 13, 2018, pet. denied).................................... 21

*City of Clinton, Ark. v. Pilgrim's Pride Corp*., 632 F.3d 148 (5th Cir. 2010) ........................... 22

*Cohen v. Ruckelshaus,* 20 F.3d 465 (5th Cir. 1994) ...................................................... 30

*Colonial Funding Network, Inc. v. McNider Marine, LLC*, 2017 WL 5633160 (S.D.N.Y. Nov. 21, 2017) ............................................................................. 18

*DH Cattle Holdings Co. v. Smith*, 607 N.Y.S.2d 227 (1st Dep't 1994) ....................................... 25

*Dinnen v. Kneen,* 2017 WL 4163356 (D. Colo. Sept. 19, 2017) ................................................. 25

*Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333 (5th Cir. 2008) .................................................. 13

*Flaherty & Crumine Preferred Income Fund, Inc. v. TXU Corp.*,
565 F.3d 200 (5th Cir. 2009) ................................................................. 13

*Gipson v. Deutsche Bank Nat. Tr. Co*, 2015 WL 2079514 (N.D. Tex. May 4, 2015) ................. 31

*Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913 (Tex. 2010) ............ 21, 24

*Grisel v. Everest Int'l, LLC*, 2022 WL 714516
(Tex. App.--Fort Worth Mar. 10, 2022, pet. denied) ................................................. 21

*Haberland v. Bulkeley*, 896 F. Supp. 2d 410 (E.D.N.C. 2012) ................................................ 29

*Hopson v. MetroPCS Communications, Inc.*, No. 3:09-CV-2392-G,
2011 WL 1119727 (N.D. Tex. Mar. 25, 2011) ........................................................... 10

*Hua Nan Commercial Bank v. HSBC Bank USA, N.A.*,
2011 WL 13217782 (C.D. Cal. May 19, 2011) ........................................................... 20

*In re BP p.l.c. Sec. Litig.*, 2017 WL 7037706 (S.D. Tex. June 30, 2017) ................................... 13

*In re Browning-Ferris Indus., Inc. S'holder Derivative Litig.*,
830 F. Supp. 361 (S.D. Tex. 1993) ........................................................................ 29

*In re Dell Inc., Sec. Litig.*, 591 F. Supp. 2d 877 (W.D. Tex. 2008) .......................................... 11

*In re Enron Corp. Sec., Derivative & Erisa Litig.*,
762 F. Supp. 2d 942 (S.D. Tex. 2010) ....................................................... 22, 23, 24, 28, 29

*In re Facebook, Inc. Sec. Litig.*, 477 F. Supp. 3d 980 (N.D. Cal. 2020) .................................... 29

*In re Odyssey Healthcare, Inc. Sec. Litig.*, 424 F. Supp. 2d 880 (N.D. Tex. 2005) ..................... 12

*Indiana Elec. Workers' Pension Tr. Fund IBEW v. Shaw Group, Inc.*,
537 F.3d 527 (5th Cir. 2008) ................................................................................ 11

*Jacobowitz v. Range Res. Corp.*, 596 F. Supp. 3d 659 (N.D. Tex. 2022) .................................... 14

*Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135 (2011) .............................. 8

*JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648 (Tex. 2018) ........... 27

*KB Partners I, L.P. v. Barbier,* 907 F. Supp. 2d 826 (W.D. Tex. 2012) ..................................... 21

*Kohut v. KBR, Inc.*, 2015 WL 11995250 (S.D. Tex. Sept. 3, 2015) ............................................. 8

*Lachman v. Revlon, Inc.*, 487 F. Supp. 3d 111 (E.D.N.Y. 2020) ................................................ 28

*Lane v. Conestoga Settlement, LLC*, Case No. 3:21-cv-00568-L ..................................................... 1

*Lee v. Active Power, Inc.,* 29 F. Supp. 3d 876 (W.D. Tex. 2014) ................................................. 14

*Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363 (5th Cir. 2001) ........................... 17

*Magruder v. Halliburton Co.,* No. 3:05-CV-1156-M, 2009 WL 854656
   (N.D. Tex. Mar. 31, 2009) ..................................................................................................... 11

*Mascaro Aviation, L.L.C. v. Diamond Aircraft Indus., Inc.,* 2011 WL 856805
   (S.D. Fla. Mar. 8, 2011), adopted sub nom., 2011 WL 1114317 (S.D. Fla. Mar. 25, 2011) .... 20

*Maynard v. PayPal, Inc.*, 2019 WL 3552432 (N.D. Tex. Aug. 5, 2019) ...................................... 25

*Melder v. Morris*, 27 F.3d 1097 (5th Cir.1994) ........................................................................... 16

*Model Drug, Inc. v. Amerisourcebergen Drug Corp,* 2013 WL 12497595
   (E.D. Cal. Dec. 13, 2013)........................................................................................................ 26

*Outlaw Lab., LP v. Shenoor Enter., Inc.*, 371 F. Supp. 3d 355 (N.D. Tex. 2019)......................... 9

*Padilla Imp. Sales & Mktg., Inc. v. Griffin*, 2019 WL 3305629 (S.D. Tex. Apr. 10, 2019)......... 22

*Purdin v. Wells Fargo Bank, N.A.*, 2016 WL 1161808 (N.D. Tex. Mar. 23, 2016).................... 23

*R2 Invs. LDC v. Phillips,* 401 F.3d 638 (5th Cir. 2005) ............................................................... 6

*Rodriguez v. Tranckino,* 2013 WL 12140297 (S.D. Tex. June 5, 2013) ...................................... 30

*Rogers v. City of Yoakum*, 660 Fed. Appx. 279 (5th Cir. 2016)................................................... 24

*Rolo v. City Investing Co. Liquidating Trust,* 155 F.3d 644 (3d Cir.1998) ........................... 18, 19

*Rosenzweig v. Azurix Corp.,* 332 F.3d 854 (5th Cir. 2003) ......................................................... 21

*RYH Properties, LLC v. West*, No. 5:08-CV-172 DF, 2009 WL 10676645
   (E.D. Tex. Aug. 3, 2009) ........................................................................................................ 11

*Samsung Elecs. Am., Inc. v. Chung*, 2018 WL 3475593 (N.D. Tex. July 19, 2018)................... 30

*Schlumberger Tech. Corp. v. Swanson,* 959 S.W.2d 171 (Tex. 1997) ........................................ 21

*Sejin Precision Indus. Co., Ltd. v. Citibank, N.A.,* 2017 WL 4350323
   (S.D.N.Y. June 28, 2017), aff'd, 726 Fed. Appx. 27 (2d Cir. 2018)........................................ 25

*Shailja Gandhi Revocable Tr. v. Sitara Capital Mgmt., LLC*, 2011 WL 814647
   (N.D. Ill. Feb. 25, 2011)......................................................................................................... 20

*Simmons v. Outreach Health Cmty. Care Services LP*, 2016 WL 3162147
 (W.D. Tex. June 3, 2016)......................................................................................... 23

*Simmons v. Peavy–Welsh Lumber Co.*, 113 F.2d 812 (5th Cir. 1940)......................................... 24

*Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353
 (5th Cir. 2004)......................................................................................... 7, 9, 11, 14, 15

*Steiner v. Southmark Corp.*, 734 F. Supp. 269 (N.D. Tex. 1990)................................................. 28

*Taddeo v. Taddeo*, 2011 WL 4074433 (D. Nev. Sept. 13, 2011) ................................................ 27

*Thuman v. Dembski*,, 2017 WL 3614522 (W.D.N.Y. Apr. 4, 2017) ........................................... 25

*Top Gun Ammo Sales, LLC v. COF Techs., LLC*, 2022 WL 823061
 (E.D. Mo. Mar. 18, 2022) ........................................................................................... 26

*United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180 (5th Cir. 2009)................................. 19

*United States v. Swinton*, 251 F. Supp. 3d 544 (W.D.N.Y. 2017) ............................................... 15

*Van Duzer v. U.S. Bank Nat. Ass'n,* 995 F. Supp. 2d 673
 (S.D. Tex. 2014), aff'd, 582 Fed. Appx. 279 (5th Cir. 2014)....................................... 19

*Van Horne v. Valencia*, No. 1:21-CV-173-H, 2022 WL 2800878
 (N.D. Tex. July 18, 2022) ........................................................................................... 15

*VeroBlue Farms USA, Inc. v. Wulf*, 465 F. Supp. 3d 633 (N.D. Tex. 2020) ............................... 12

*W & L Ventures, Inc. v. E. W. Bank*, 2014 WL 1248157 (S.D. Tex. Mar. 26, 2014) ................... 24

*Washington v. Util. Trailer Mfg. Co.,* 2014 WL 2831189 (M.D. Ala. June 23, 2014)................. 28

*White v. BAC Home Loans Serv*., 2010 WL 4352711 (N.D.Tex. Nov. 2, 2010)........................... 23

*Yoshikawa v. Exxon Mobil Corp*., No. 3:21-CV-00194-N, 2022 WL 4677621
 (N.D. Tex. Sept. 29, 2022) ..................................................................................... 15, 16

**Statutes**

Private Securities Litigation Reform Act ("PSLRA"). 15 U.S.C. § 78u–4(b)..................... 6, 7, 11

**Rules**

FED. R. CIV. P. 12(b)(6) ........................................................................................... 1, 6

FED. R. CIV. P. 9(b).................................... 1, 6, 7, 8, 12, 13, 16, 17, 18, 19, 20, 21, 27, 28

The Court should adopt Magistrate Judge Ramirez's recommendation that Plaintiffs' claims for common law fraud, fraud by nondisclosure, securities fraud, civil conspiracy, and breach of fiduciary duty that are asserted in the Second Amended and Consolidated Complaint ("SAC") (Doc. 197) be dismissed under Rules 9(b) and 12(b)(6) for failure to state a claim against Defendants Conestoga Settlement Services, LLC; Conestoga International, LLC; Conestoga Trust Services, LLC and Michael McDermott. *See* Findings, Conclusions, and Recommendation (Doc. 243) ("Report"). Plaintiffs' Objections (Doc. 246) provide no proper grounds for rejecting the Magistrate Judge's recommendation.  In any event, such claims should be dismissed for additional reasons not reached by the Magistrate Judge. *See* Motion to Dismiss (Doc. 208); Appendix (Doc. 209); Reply (Doc. 216).

## I.  STATEMENT OF THE CASE

Plaintiffs' SAC is effectively the *fifth* attempt by Plaintiffs to state claims in this litigation.[1] The allegations concern Plaintiffs' investments in life settlements.  SAC, *passim*. There are more than 110 Plaintiffs. SAC ¶¶ 3, 11-109. The Plaintiffs each assert claims based on their own individual investments—which occurred at different times (from 2010 to 2017), involved different disclosures and discussions with different sales agents, and involved investments in different mixes of different life settlement policies. SAC ¶¶ 293-726.  The SAC names multiple Defendants: Conestoga Settlement Services, LLC ("CSS"); Conestoga International, LLC ("CILLC"); Conestoga Trust Services, LLC ("CTS"), Michael McDermott ("McDermott"), Provident Trust Group, LLC ("Provident"); and James Settlement Services, LLC ("JSS").   SAC ¶ 1.   As will be

---

[1] 1: Doc. 1-4 (original petition); 2: Doc. 21 (amended complaint) 3: Doc. 1 in Cause No. 3:21-cv-00568-L (complaint in *Lane* action); 4: Doc. 147 (amended and consolidated complaint); 5: Doc. 197 (second amended and consolidated complaint). *See also* doc. 114 in 3:21-CV-568-L (summarizing events in *Lane* action) and Doc. 138 herein (consolidating *Lane* with this case).

shown, despite so many Plaintiffs and six different Defendants, the SAC relies on improper "group pleading" as to both Defendants and Plaintiffs. *See, e.g., A.I.A. Holds., S.A. v. Lehman Bros., Inc.*, 1998 WL 159059, at *8 (S.D.N.Y. Apr. 1, 1998) ("[T]he complaint describes a generic fraud, as if each plaintiff's case is identical to every other case, and relies on broad, sweeping generalizations. Such pleading is inadequate under Rule 9(b).").

The Plaintiffs invested in the right to receive a certain portion of the total death benefits payable on certain life insurance policies. SAC ¶¶ 3-5, 120-22.  Plaintiffs are responsible for paying their pro rata share of the costs to maintain such policies (*i.e.,* pay premiums) until the policies mature (*i.e.*, when the insureds die). *Id.*  When investing, Plaintiffs were provided with *estimates* (prepared by third-parties) of how long the insureds were expected to live that are known as "life expectancies" or "LEs." *See* SAC ¶¶ 5, 160; *see also id.* at ¶ 222 (acknowledging "the disclosures [provided to Plaintiffs] stated that life expectancy estimate is inherently uncertain, unverifiable, and can turn out to be inaccurate."). Plaintiffs were also provided *estimates* (prepared by a third-party, JSS) of how much money would be needed annually to keep each policy in force during a time frame called the "premium reserve period." *See* SAC ¶ 160 (acknowledging Policy Selection Sheets showed "*estimated* annual premium cost"); *see also* ¶ 4 (acknowledging "*JSS* provided all of the polices and critical life expectancy and premium information."); ¶¶ 175-6 (*JSS* calculated estimated premiums).

The SAC alleges fraud by hindsight: Plaintiffs contend they were defrauded because *some* of the *estimates* of future events and costs they were provided have turned out to be incorrect. Plaintiffs frame their claims by ignoring that they were clearly informed the life expectancy estimates and the premium estimates were just that: *estimates.* The SAC simply ignores the cautionary language ("red flags") in the transaction documents that directly refute Plaintiffs' claims.  The SAC vaguely alleges that some insureds have lived longer than originally estimated and that some premium costs are higher than the estimated amounts by some unspecified amount.  No

Plaintiff explains which of their various policy investments have been impacted or how. No Plaintiff attempts to explain how it could be justifiable for them to rely on the life expectancy estimates when they were cautioned not to rely on such estimates. No Plaintiff indicates how much more they have paid for premiums versus how much they believe they reasonably should have been expected to pay.

Although Plaintiffs suggest the PPM (Policy Purchase Memorandum) contained only "vague disclosures" that were "buried" (SAC ¶¶ 220-21), the Court will readily discover that such is not the case. *See* Report at 18 (adopting PPMs as part of the record for purpose of the Motion to Dismiss); *see also id* at 5-10 (quoting and discussing the PPMs). Relevant, clear and conspicuous cautionary language is found throughout the applicable PPMs, located wherever the subject at hand is being discussed. Indeed, Plaintiffs' theory of the case relies on pretending the PPMs' discussion of "risks" was hidden despite being located in the section of the PPM conspicuously entitled "**Risks**." *See* Report at 5-10 and Doc. 209 at Appx.062-70, 97-108, 141-49, 174-85.

The PPM explained that investors, including Plaintiffs, would not "receive any funds or realize any gain" until "the insured person has died and the life insurance company has paid the death benefit" and that "[t]he longer the insured person lives, the more premiums need to be paid to keep the life insurance policy in force." (Doc 209 at Appx.063, 83, 98, 142, 175). The PPM cautioned that "no one can with certainty predict the date of death of the insured person" and "life expectancy predictions are only forecasts, projections, and estimates of the expected longevity of an insured and are inherently uncertain[.]" *Id*.

Plaintiffs were specifically warned that "THIS IS A HIGHLY SPECULATIVE INVESTMENT." (Doc. 209 at Appx.062, 96, 141, 174). They were advised "IT IS DESIGNED FOR SOPHSTICATED INVESTORS WHO ARE ABLE TO BEAR THE ECONOMIC RISK OF THE LOSS OF THEIR INVESTMENT…." *Id*. (all capitals in original). Plaintiffs were

specifically cautioned that "[s]ome of the significant risk factors of which Participants should be aware include the following: …. **Uncertainty of Life Expectancy** …. **Requirement to Pay Additional Premiums** [and] **Increased Premiums."** *Id*. (bold in original). These risks were detailed in the section entitled "**Risks**." (Doc. 209 at Appx.062-70, 97-108, 141-49, 174-85).

Plaintiffs were cautioned that the life expectancy estimates and premium cost estimates were only *estimates*. For example, Plaintiffs were informed that part of the initial investment would be "held in an escrow account for *estimated* premiums to keep the life insurance policy in force." (Doc. 209 at Appx. 065, 72, 100, 110, 151, 177, 187) (emphasis added). Plaintiffs were expressly advised that these estimates were provided by third-parties and were "not independently verified." (*See, e.g*., Doc. 209 at Appx. 099-100). Plaintiffs were cautioned the estimates of future premium costs could prove inadequate: *e.g*., "there can be no assurance that such estimate will be accurate or sufficient to pay such premiu*ms*." *Id*. Relatedly, Plaintiffs were advised of the risk of potentially being obligated to pay additional amounts:

> After the funds held in escrow for the payment of premiums has been depleted, Participants who own beneficial percentages of the policies affected *will be required to pay additional premiums to maintain the policy and to keep it in force. This will have the effect of lowering the expected net gain* of the Participant.

(Doc. 209 at Appx. 063, 98, 142, 175; *see also id*. at Appx. 051, 83, 129, 162).

In the Report, the Magistrate Judge correctly found that CSS, CILLC, CTS and McDermott were *not* "the source of the false and misleading statements in the marketing materials" underlying the Plaintiffs' claims herein." Report at 28. Indeed, the SAC acknowledges that the life expectancy estimates and premium cost estimates were instead provided by a third-party, Defendant James Settlement Services ("JSS"). SAC ¶¶ 4, 175-76, 266-70. Moreover, the life expectancy estimates (LEs) were created by third-party life expectancy companies. SAC ¶ 213.

Plaintiffs allege that <u>*JSS*</u> "knew that the life insurance policies in the portfolio were

4

actually worth much less than Conestoga charged because JSS itself had acquired the policies for much less only months earlier." SAC ¶ 271. But Plaintiffs do *not* attempt to suggest that CSS, CI, CT or McDermott had any knowledge of what JSS paid for policies, or that CSS, CILLC, CTS or McDermott knew that any LE or premiums cost estimates provided by JSS were inaccurate, fraudulent or improper when such estimates were passed on to investors. On the contrary, the record shows that CTS relied to its detriment on the same estimates by JSS. As Plaintiffs acknowledge, CTS "later brought a lawsuit against JSS and the life expectancy companies in which it alleged that the life expectancy reports by these companies had been 'prepared in a fraudulent or reckless manner[.]'" SAC ¶ 213, 225. That lawsuit also alleged that "the cost calculations performed by [JSS] were performed in a negligent, reckless, and/or fraudulent manner." *Id.* ¶ 225. The entire point of CTS's lawsuit against JSS was that CTS relied on and was damaged by JSS's estimates. (*See, e.g.,* Doc 209 at Appx. 231 ("Conestoga would not have bought the life settlements at issue, or would have paid far less for them" but for misconduct of JSS)).

As Plaintiffs were warned could happen when they invested, a number of the policies that Plaintiffs invested in will mature later than had been initially estimated. *See, e.g.,* Report at 7 ("The actual maturity date of the policies may be longer than predicted[.]"). Plaintiffs were also advised that "[t]he longer the insured person lives, the more premiums need to be paid to keep the life insurance policy in force." *See id.* And, as Plaintiffs were also warned could happen, they have been "required to pay additional premiums" beyond what was initially estimated in order to maintain some of the policies they invested in. *See id.* Frustrated at waiting longer and paying more than originally estimated and hoped for, Plaintiffs filed this lawsuit.

Defendants CSS, CILLC, CTS and McDermott filed a Motion to Dismiss pursuant to Rule 12(b)(6) and Rule 9(b) (Doc. 208) with a supporting Appendix (Doc. 209) and Reply (Doc. 216).

Magistrate Judge Ramirez has issued a Report recommending that Plaintiff's claims for common law fraud, fraud by nondisclosure, securities fraud, civil conspiracy, and breach of fiduciary duty asserted in the SAC be dismissed. Report (Doc. 243). Plaintiffs have filed Objections (Doc. 246). As shown below, the objections should be overruled, the Report adopted, and the claims dismissed. Alternatively, in the unlikely event this Court does not dismiss all fraud-based claims for the reasons set forth in the Report, the claims should be dismissed for additional reasons that the Magistrate Judge did not reach.

## II.  STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, *each plaintiff* must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. Courts do not "strain to find inferences favorable to the plaintiffs" and do not "accept conclusory allegations, unwarranted deductions, or legal conclusions." *R2 Invs. LDC v. Phillips,* 401 F.3d 638, 642 (5th Cir. 2005); *Ashcroft v. Iqbal,* 556 U.S. 662, 679-80 (2009). As the claims herein sound in fraud, *each plaintiff* must satisfy Rule 9(b) as to *each Defendant* by stating "with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). All Plaintiffs alleging Section 10b-5 securities fraud claims must also *each* satisfy the heightened pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"). 15 U.S.C. § 78u–4(b). The Report applied the appropriate standard of review to the motion to dismiss. Report at 16-18. Plaintiffs have not objected to the standard applied.

## III.  ALL FRAUD-BASED CLAIMS SHOULD BE DISMISSED

**A.    The Motion to Dismiss all fraud-based claims should be granted for the reasons set forth by the Magistrate Judge.**

1.      **Claims sounding in fraud should be dismissed because Plaintiffs must satisfy Rule 9(b) and PLSRA as to *each Defendant* but Plaintiffs rely on "group pleading."**

To state a claim for fraud when there are multiple defendants, Plaintiffs must "distinguish among those they sue and enlighten *each defendant* as to his or her particular part in the alleged fraud." *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 365 (5th Cir. 2004) (emphasis by Fifth Circuit); Report at 22-24 and 35-30 (citing cases). "The complaint must distinguish the role, intent, and knowledge of *each* defendant." Report at 29, quoting *Kohut v. KBR, Inc.*, 2015 WL 11995250, at *11 (S.D. Tex. Sept. 3, 2015), citing *Southland*, 365 F.3d at 365. General allegations of fraud that lump all defendants together do not meet the requirements of Rule 9(b). *Busch v. Basic Organics, Inc.*, No. CIVA 3:06CV2261 L, 2007 WL 603385, at *6 (N.D. Tex. Feb. 27, 2007). Such group pleading also clearly fails to meet the heightened standards of PSLRA. *See, Southland Sec. Corp.*, 365 F.3d at 365.[2]

The Report properly determined that "[b]ecause Plaintiffs' allegations about misrepresentations and omissions are attributed to defendants as a group and do not give them fair notice of the nature of each defendant's alleged participation in the alleged fraud, they fail to sufficiently state a fraud claim with particularity against Defendants." Report at 29. Indeed, the SAC "lumps CSS, CILLC, and CTS together and refers to all three of those different entities as 'Conestoga'" (Report at 4 n. 1), and then "nearly all the factual allegations concerning fraud are directed at 'Conestoga' or the defendants as a group." Report at 27. This is "improper 'group pleading' that does not distinguish the conduct of the individual Defendants." *Outlaw Lab., LP v. Shenoor Enter., Inc.*, 371 F. Supp. 3d 355, 369 (N.D. Tex. 2019).

---

[2] Among other things, Section 10b-5 claims (including claims based on an omission) are limited to a defendant who actually makes a statement. *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135, 144 (2011). With the SAC's complete reliance on group pleading, no allegations are made as to **who** actually made any statement or omission. *See Janus Capital Group, Inc.*, 564 U.S. at 146-48.

The SAC may be lengthy but, as the Report astutely notes, "[a] complaint can be long-winded, even prolix, without pleading with particularity ... [i]ndeed, such a garrulous style is not an uncommon mask for an absence of detail." Report at 22, quoting *Southland Sec. Corp. v. INSpire Ins. Sols., Inc*., 365 F.3d 353, 362 (5th Cir. 2004).  Here, "the fraud claims against the six individual defendants are all predicated on material misrepresentations and omissions" allegedly made in the "marketing materials." Report at 27.  Although the SAC "generally alleges that all the defendants had some involvement in creating the marketing materials," it "fails to allege specific facts sufficient to show that each individual defendant made the misrepresentations in the marketing materials or determined what information should or should not be included in those materials." Report at 27; *see also id.* at 28 ("Further, Plaintiffs have not set forth sufficient facts to show that each defendant decided or had the authority to decide what information to include in or omit from the marketing materials.").  Instead, Plaintiffs allege only in broad, conclusory fashion that all of the Defendants made all of the misrepresentations and omissions at issue and that all of the Defendants did so with the requisite knowledge and intent.[3] *See* Report 25-30.

In their Objections to the Report, Plaintiffs largely ignore their failure to plead fraud with particularity as to each Defendant and instead maintain that they have alleged (albeit in terse, conclusory terms) that McDermott was involved with managing CTS, CSS and CILLC. *See* Objection at 5.  However, the issue is whether Plaintiffs have alleged with sufficient particularity

---

[3] *See, e.g.*, SAC ¶ 734 ("*McDermott, Conestoga, JSS, and Provident* either directly or by attribution, made material misrepresentations to Plaintiffs ..."); ¶ 736 (*Defendants* either made these misrepresentations directly, or the statements are attributable to them ..."); ¶ 738 ("These representations [by *Defendants*] were either known to be false when made, were made without any intention of performing or honoring the promises being made, or were made with reckless disregard for their truth or falsity."); ¶ 739 (*"Defendants* made these false statements and promises with the *intention* that ..."); ¶ 743 ("*McDermott, Conestoga, JSS, and Provident* omitted, concealed, and otherwise failed to disclose ..."); 745 ("Each of these *Defendants* had a duty to disclose these facts ..."; ¶ 748 ("These *Defendants* were deliberately silent ...") (emphasis added).

the role of each Defendant (including McDermott) *in the alleged fraud*.  As for McDermott himself, the SAC may allege several things about him but it does *not* allege any *facts* indicating that McDermott himself either made or authorized *any* misrepresentation or material omission at issue (much less that he did so with the requisite knowledge and intent).[4]  Instead, as to those critical matters, the Report correctly found that McDermott is simply lumped in with all of the other Defendants in Plaintiff's broad, conclusory allegations—*e.g.,* "McDermott, Conestoga, JSS, and Provident either directly or by attribution, made material misrepresentations to Plaintiffs ..." (SAC ¶ 734); "Defendants made these false statements and promises with the *intention* that ..." (SAC ¶ 739). *See* Report 25-30.

To the extent Plaintiffs are now suggesting that McDermott "must have" been aware of alleged misrepresentations and omissions merely because of his position or role, that sort of argument "has been flatly rejected by the Fifth Circuit." *Hopson v. MetroPCS Communications, Inc.*, No. 3:09-CV-2392-G, 2011 WL 1119727, at *15 n. 17 (N.D. Tex. Mar. 25, 2011), citing *Southland,* 365 F.3d at 365; *Magruder v. Halliburton Co.,* No. 3:05-CV-1156-M, 2009 WL 854656, at *9 (N.D. Tex. Mar. 31, 2009) ("Corporate officers may *not* be held responsible for unattributed corporate statements solely on the basis of their titles, even if their general level of day-to-day involvement in the corporation's affairs is pled.") citing *Abrams v. Baker Hughes Inc.*,

---

[4] As to "marketing materials," McDermott's Declaration states:

> 7.  .... I charged De Leon & Washburn [a third-party law firm] with the responsibility to draft all of the disclosures and documents to be used when investors would purchase investments in life settlements through the Conestoga Trust. I also charged De Leon & Washburn with ensuring that the transaction documents contained all required disclosures and complied with the law in every respect. *All of the documents used in connection with the sale by Conestoga Trust of life settlement investments were either drafted by De Leon & Washburn or approved by them as compliant with all applicable law.*

Doc. 209 at Appx. 003 (¶ 7) (emphasis added); *see also id.* at Appx. 002-3 (¶¶ 5-6). No facts alleged in the SAC contradict McDermott's description of how and by whom the "marketing materials" were prepared.

292 F.3d 424, 432 (5th Cir. 2002) ("A pleading of scienter may not rest on the inference that defendants must have been aware of the misstatement based on their positions within the company."); *see also, e.g., Indiana Elec. Workers' Pension Tr. Fund IBEW v. Shaw Group, Inc.,* 537 F.3d 527, 535 (5th Cir. 2008); *RYH Properties, LLC v. West*, No. 5:08-CV-172 DF, 2009 WL 10676645, at *9 (E.D. Tex. Aug. 3, 2009); *In re Dell Inc., Sec. Litig.,* 591 F. Supp. 2d 877, 894 (W.D. Tex. 2008); *In re Odyssey Healthcare, Inc. Sec. Litig.,* 424 F. Supp. 2d 880, 890 (N.D. Tex. 2005).

Moreover, merely pleading that Defendants acted in concert does not allow Plaintiffs to "circumvent Rule 9." *See, VeroBlue Farms USA, Inc. v. Wulf*, 465 F. Supp. 3d 633, 655–56 (N.D. Tex. 2020) ("If pleading a conspiracy is all it took to circumvent Rule 9, courts would never hear of Rule 9 again. And if saying 'you are a fraudster' is not enough, then saying 'y'all are fraudsters' likewise falls short of Rule 9's standards[.]"). Similarly, pleading that Defendants played some otherwise benign role with regard to a transaction is hardly the same as pleading that each Defendant consciously played a role in the alleged fraud. The Report correctly concludes that "[e]ven though Plaintiffs allege facts about each defendant's role in the Conestoga investment, their group pleading allegations that all the defendants made the misrepresentations and omissions in the marketing materials are inadequate to raise a reasonable inference of each individual defendant's *conscious participation in the fraudulent conduct* giving rise to the fraud claims against each defendant." Report at 28-29 (emphasis added).

Trying to justify their own clearly improper group pleading, Plaintiffs' Objection incorrectly suggests that McDermott's Declaration "conflated distinctions between" CT, CSS and CILLC. *See* Objection at 6-7. In fact, McDermott explains in that Declaration that his references to "Conestoga" are to only "Conestoga Trust." Doc. 209 at Appx. 002 (¶ 3) (stating that

"Conestoga Trust" will be "sometimes referred to herein as 'Conestoga'"). Unlike Plaintiff's SAC, the Declaration does not "conflate" separate entities.  In any event, the issue is whether *the SAC* satisfies Rule 9(b) and the PLSRA.

In their Objection, Plaintiffs also assert that two of the marketing materials at issue "had CILLC's name on them." Objection at 8.  Of course, having CILLC's name on the documents has nothing to do with whether CILLC made or authorized any specific misrepresentation or fraudulent omissions at issue *with the intent and knowledge required* for "conscious participation in the fraudulent conduct giving rise to the fraud claims against each defendant."[5] Report at 28-29.  With regard to allegations concerning those matters, the Report correctly found that CILLC is merely lumped in with "Conestoga" and then lumped in with the other Defendants. Report 25-30.

Although common law fraud claims are not subject to the "strong inference" standard of the PSLRA, "they still need to meet the heightened pleading standard of Rule 9(b) by alleging scienter with particularity." *In re BP p.l.c. Sec. Litig.*, 2017 WL 7037706, at *14 (S.D. Tex. June 30, 2017), citing  *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 341 (5th Cir. 2008); *Flaherty & Crumine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 213 (5th Cir. 2009) (although "common law fraud claims are not subject to the heightened 'strong inference' of scienter standard imposed by the PSLRA," those claims "are still subject to the heightened pleading standard of Rule 9(b)."); *Southland Sec. Corp.*, 365 F.3d at 364 (noting that "group pleading"  of fraud was disallowed even before PSLRA).  Here, Plaintiffs' allegations that Defendants acted with the required knowledge and intent consist only of improper group pleading. *See Lee v. Active Power,*

---

[5] In the Objection, Plaintiffs state without a cite that the SAC identifies specific documents that McDermott and CTS "approved."  Objection at 7.  But a review of the SAC reveals no allegations that McDermott or CTS approved any documents, much less any allegations of any fraudulent intent with respect to any statements in any allegedly approved documents.  Rather, the SAC through the McDermott declaration reveals that De Leon & Washburn was responsible for the PPMs (the documents Plaintiffs are referring to) and there are no allegations in the SAC to the contrary. *See supra* n. 3.

*Inc.,* 29 F. Supp. 3d 876, 882 (W.D. Tex. 2014) ("Group pleadings of scienter are inadequate under the PSLRA and the common law ... [T]he required state of mind must actually exist in the individual making (or being a cause of the making of) the misrepresentation, and may not simply be imputed to that individual on general principles of agency.") (citations omitted).

Although Plaintiffs' Objection futilely tries to argue that they sufficiently alleged each Defendants' roles in making or authorizing representations and omissions at issue, Plaintiffs completely overlook (and thus do not even address) that the Report also correctly found that the SAC fails to plead with particularity the "intent" or the "knowledge" of "each defendant" with regard to "each alleged false statement or material omission." *See* Report at 28-30; *see also Alaska Elec. Pension Fund v. Asar*, 768 Fed. Appx. 175, 184 (5th Cir. 2019) ("This court does not consider group pleading allegations.  Nor does this court allow group pleading allegations to establish scienter."); *Jacobowitz v. Range Res. Corp.*, 596 F. Supp. 3d 659, 686–87 (N.D. Tex. 2022) ("[T]o adequately plead scienter, plaintiffs must make "individualized, specific allegations about each speaker's state of mind for each allegedly false or misleading statement.") (emphasis added; citation omitted); *Yoshikawa v. Exxon Mobil Corp.*, No. 3:21-CV-00194-N, 2022 WL 4677621, at *3 (N.D. Tex. Sept. 29, 2022) ("Scienter must be shown as to each Defendant, and group allegations 'are not properly imputable as to any particular defendant.' Plaintiffs' allegations, while detailed, are largely impermissible group pleading.") (citation omitted).  Plaintiffs have simply not alleged "*individualized, specific allegations about each speaker's state of mind for each allegedly false or misleading statement.*" *Yoshikawa*, 2022 WL 4677621, at *3 (emphasis added); *see also, Southland Sec. Corp.*, 365 F.3d at 370 ("conclusory allegation that the defendants knew the figures were false relies on "group pleading" and fails to plead facts with the requisite specificity").  Thus, not only is the Report correct that Plaintiffs improperly attributed the alleged

12

misrepresentations and omissions to defendants as a group, but under any standard of review, the Report correctly concludes that the SAC engages in improper "group pleading" of scienter.[6]

In sum, the Report properly found that the SAC "lacks particularity as to which defendant created or made the misrepresentations or authorized the omissions in those marketing materials." Report at 25. Furthermore, the Report properly found that the SAC fails to "distinguish the role, *intent, and knowledge* of *each* defendant." Report at 29.  Plaintiffs don't even attempt to argue in their Objection that the SAC does not "group plead" scienter (the words "scienter" and "intent," do not even appear in the Objection).  Because "simple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b), ... plaintiffs must set forth *specific facts* supporting an inference of fraud." Report at 32, quoting *Melder v. Morris*, 27 F.3d 1097, 1102 (5th Cir.1994) (emphasis by Fifth Circuit).  Plaintiffs' conclusory, group pleading of knowledge and intent "are inadequate to raise a reasonable inference of each individual defendant's *conscious participation in the fraudulent conduct* giving rise to the fraud claims against each defendant." Report at 28-29 (emphasis added). The SAC lacks "individualized, specific allegations about each speaker's state of mind for each allegedly false or misleading statement" (*Yoshikawa*, 2022 WL 4677621, at *3), and thus fails to plead with particularity the "intent" or the "knowledge" of "each defendant" with regard to "each alleged false statement or material omission." *See* Report at 28-30.

The Report should be adopted. "Because Plaintiffs have failed to meet the heightened pleading requirement of Rule 9(b) or the PSLRA, Defendants' motion to dismiss their claims against them for common law fraud, fraud by nondisclosure, and securities fraud for failure to state

---

[6] For an objection to be reviewed de novo it must be "*specific and clearly aimed at particular findings* in the magistrate judge's proposal."  *Van Horne v. Valencia*, No. 1:21-CV-173-H, 2022 WL 2800878, at *1 (N.D. Tex. July 18, 2022) (emphasis added), quoting *United States v. Swinton*, 251 F. Supp. 3d 544, 549 (W.D.N.Y. 2017). Plaintiffs did not specifically object to (or provide argument specifically challenging) the Report's findings regarding the SAC's improper group pleading of knowledge and intent.

a claim should be granted." Report at 30.

### 2.      The conspiracy claims should be dismissed.

The Report correctly found that the SAC did not plead "some underlying unlawful or tortious act" to sustain a conspiracy claim because Plaintiffs "failed to satisfy the heightened pleading requirements of Rule 9(b) on any of their fraud claims." Report at 31.   Plaintiffs' Objection concedes that their conspiracy claims depend on their fraud claims.  The conspiracy claims should be dismissed.

### 3.      The fiduciary duty claim should be dismissed.

The Magistrate properly determined that "[t]he fiduciary duty claim against CTS is clearly based on allegations of fraud." Report at 33. "Rule 9(b) applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not*." Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001). The Report correctly concluded that the breach-of-fiduciary-duty claim "fails for the same reasons [as] each of their fraud claims." Report at 35.   The breach of fiduciary duty claims against CTS should be dismissed.

## B.      Alternatively, the Court should grant the Motion to Dismiss on grounds not reached by the Magistrate Judge.

In the unlikely event this Court does not dismiss all fraud-based claims for the reasons set forth in the Report, the Motion to Dismiss should still be granted as to such claims. *See Barrow v. Greenville Indep. Sch. Dist.*, 202 F.R.D. 480, 483 n. 4 (N.D. Tex. 2001) ("The court may affirm a correct decision of the magistrate judge for reasons not given by, or advanced to, him.")  The Motion to Dismiss sets forth several additional grounds not reached by the Magistrate that demonstrate dismissal is proper.  (Doc 208, Motion to Dismiss).

### 1.  No class has been certified and each Plaintiff must individually satisfy Rule 9(b).

As the Report recommended dismissal of the fraud claims based on Plaintiffs' improper

group pleading as to Defendants, the Magistrate did not reach Defendants' arguments concerning the SAC's equally improper group pleading as to Plaintiffs. *See* Doc 208, Motion to Dismiss, at 13-15.  There are more than 100 Plaintiffs. SAC ¶¶ 3, 11-109.  No class has been certified herein and *each* individual Plaintiff "must allege what happened *to them*" and must do so with the particularity required by Rule 9(b) and the PSLRA. *See, Brown v. Protective Life Ins. Co*., 353 F.3d 405, 407 (5th Cir. 2003), quoting *Rolo v. City Investing Co. Liquidating Trust,* 155 F.3d 644, 659 (3d Cir.1998). "Under Rule 9(b), failure to plead fraud *with particularity with respect to what happened to a specific plaintiff* prevents the defendants from being able to prepare a defense as to this particular allegation of fraud.*" Rolo,* 155 F.3d at 659.[7]  Put simply, "you cannot get around the requirements of [Rule 9(b)] just by joining a lot of separate cases into one." *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 470 (7th Cir. 1999); *see also, Colonial Funding Network, Inc. v. McNider Marine, LLC*, 2017 WL 5633160, at *5 (S.D.N.Y. Nov. 21, 2017) ("Plaintiffs do not get a pass on satisfying Rule 9(b) merely because of the collective fashion in which they have chosen to bring this case.").

The Fifth Circuit applies "Rule 9(b) to fraud complaints with 'bite' and 'without apology.'" *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009).  Here, every Plaintiff offers only cookie-cutter, conclusory, terse and vague allegations regarding his, her or its individual claims. SAC ¶¶ 293-726.  Every single Plaintiff has failed to *specify* "who" made each representation *to them*, "what" was stated *to them,* "when" it was stated *to them***,** "where" it was stated *to them*, and "how" *they* were misled by it.  Accordingly, the claims should be dismissed for failure to satisfy the pleading requirements of Rule 9(b) and PSLRA. *See, gen. Brown.,* 353 F.3d

---

[7] Moreover, each Plaintiff alleging Section 10b-5 claims must also *each* satisfy the heightened pleading requirements of the PSLRA. 15 U.S.C. § 78u–4(b).

at 407; *Rolo*, 155 F.3d at 659; *see also, e.g., Van Duzer v. U.S. Bank Nat. Ass'n,* 995 F. Supp. 2d 673, 692 (S.D. Tex. 2014), aff'd, 582 Fed. Appx. 279 (5th Cir. 2014) (complaint failed to satisfy Rule 9(b) despite "lengthy factual background" because named plaintiffs did not plead their individual claims with particularity); *Anderson v. McGrath*, 2013 WL 1249154, at *4 (D. Ariz. Mar. 26, 2013 ("It bears repeating that this is not a class action. This case consists of 117 separate lawsuits that have been joined by Plaintiffs in one omnibus complaint. *The fact that Plaintiffs have elected to pursue their claims in a single complaint does not relieve them of the obligation to plead their individual claims sufficiently.* Generalized or group allegations do not suffice when they fail to provide the detail required from each Plaintiff.") (emphasis added); *A.I.A. Holds., S.A,* 1998 WL 159059, at *8 ("[T]he complaint describes a generic fraud, as if each plaintiff's case is identical to every other case, and relies on broad, sweeping generalizations. Such pleading is inadequate under Rule 9(b).").[8]

### 2. Particularly glaring is Plaintiffs' failure to adequately plead *justifiable reliance* on any specific misrepresentation or omission.

*Justifiable* reliance is a required element of Plaintiffs' misrepresentation and fraudulent omission claims. *See, Grisel v. Everest Int'l, LLC,* 2022 WL 714516, at *10 (Tex. App.--Fort Worth Mar. 10, 2022, pet. denied), citing *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010); *Schlumberger Tech. Corp. v. Swanson,* 959 S.W.2d 171, 181 (Tex.

---

[8] *See also, Mascaro Aviation, L.L.C. v. Diamond Aircraft Indus., Inc*., 2011 WL 856805, at *10 (S.D. Fla. Mar. 8, 2011), adopted sub nom., 2011 WL 1114317 (S.D. Fla. Mar. 25, 2011) (alleging multiple fraud claims with general allegations "contravenes Rule 9(b)'s heightened pleading requirement, because, among other things, it ignores the requirement that each *Plaintiff must support its fraud claims on a showing of individualized facts and proofs*.") (emphasis added); *Hua Nan Commercial Bank v. HSBC Bank USA, N.A.*, 2011 WL 13217782, at *13 (C.D. Cal. May 19, 2011) ("[T]he Complaint must identify the particular allegations of misrepresentation and reliance that underlie *each* plaintiff's claims."); *Shailja Gandhi Revocable Tr. v. Sitara Capital Mgmt., LLC,* 2011 WL 814647, at *2 (N.D. Ill. Feb. 25, 2011) ("[T]he court will analyze plaintiffs' complaint in this case for *specific allegations by each plaintiff* in those counts where Rule 9(b) applies") (emphasis added).

1997); s*ee also Carto Properties, LLC v. Briar Capital, L.P*., 2018 WL 827558, at *8 (Tex. App.-
-Houston [1st Dist.] Feb. 13, 2018, pet. denied); *BP Am. Prod. Co. v. Zaffirini,* 419 S.W.3d 485,
506 (Tex. App.--San Antonio 2013, pet. denied).[9]   The Magistrate did not reach Defendants'
arguments that the fraud-based claims should be dismissed because Plaintiffs failed to sufficiently
allege *justifiable reliance*. *See* Motion to Dismiss (Doc. 208) at 16-32.

To state a claim sounding in fraud, each Plaintiff must "plead *with requisite specificity*
required by Rule 9(b) *the justifiable reliance of each Plaintiff, individually,* on one or more
misrepresentations, which must also be specified." *In re Enron Corp. Sec., Derivative & ERISA
Litig*., 762 F. Supp. 2d 942, 1021 (S.D. Tex. 2010) (emphasis added).   None of the Plaintiffs have
pled specific facts demonstrating their own justifiable reliance on any specific misrepresentation
or omission.   Instead, Plaintiffs globally assert a generalized and conclusory "formulaic recitation"
of the element of justifiable reliance. *See, e.g.,* SAC ¶ 750 ("Plaintiffs ... reasonably relied on these
Defendants' non-disclosure to their detriment by deciding to purchase the investments, which they
would not have done had they been apprised of the undisclosed facts."); *see also id.* at ¶¶ 740, 766.
Of course, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires
more than labels and conclusions, and a formulaic recitation of the elements of a cause of action
will not do." *Twombly*, 550 U.S. at 555.   Here, Plaintiffs' conclusory allegations that reliance was
justifiable are clearly insufficient**.** *See, e.g., City of Clinton, Ark. v. Pilgrim's Pride Corp*., 632 F.3d
148, 155 (5th Cir. 2010) (dismissing claims where plaintiff "failed to show more than
mere conclusory allegations of justifiable reliance"); *Padilla Imp. Sales & Mktg., Inc. v. Griffin*,
2019 WL 3305629, at *3 (S.D. Tex. Apr. 10, 2019) ("Although Plaintiff does blanketly assert that
it "relied to its detriment upon the false, fraudulent, and deceptive acts and practices employed by

---

[9] Justifiable reliance is also a required for Section 10(b) claims. *KB Partners I, L.P. v. Barbier,* 907 F. Supp.
2d 826, 829 (W.D. Tex. 2012), citing *Rosenzweig v. Azurix Corp.,* 332 F.3d 854, 865 (5th Cir. 2003).

all Defendants" and that "absent such representations, Plaintiff would not have acted as Plaintiff did," [] that sweeping declaration is insufficient to meet the heightened pleading standard required for fraud claims."); *In re Enron Corp. Sec., Derivative & "ERISA" Litig*., 540 F. Supp. 2d 759, 792 (S.D. Tex. 2007) ("Plaintiffs merely include a conclusory allegation that they actually and justifiably relied on Enron's misrepresentations rather than plead with particularity.").[10]

The SAC's generic, conclusory allegations of justifiable reliance are clearly inadequate in this case involving so many Plaintiffs, given that the relevant inquiry is so highly individualized.

> In measuring justifiability, we must inquire whether, *given a fraud, plaintiff's individual characteristics, abilities, and appreciation of facts and circumstances at or before the time of the alleged fraud,* [make it] extremely unlikely that there is actual reliance on the plaintiff's part. Moreover, a person may not justifiably rely on a representation if there are *red flags indicating such reliance is unwarranted.*

*W & L Ventures, Inc. v. E. W. Bank*, 2014 WL 1248157, at *9 (S.D. Tex. Mar. 26, 2014), quoting *Grant Thornton LLP,* 314 S.W.3d at 923. In the present case, the "characteristics, abilities, and appreciation of facts and circumstances" of the more than 100 Plaintiffs are obviously not identical. Indeed, the Plaintiffs include trusts, estates, limited liability companies, a corporation, a 401K plan, a pension plan and numerous individuals located throughout the country. SAC ¶¶ 11-109. They all invested at different times (from 2010 to 2017) and in different policies (each with its

---

[10] *See also, Austin v. Bank of New York Mellon as Tr. for CWABS, Inc. Asset Backed Certificates, Series 2003-BC4*, 2020 WL 806953, at *4–5 (N.D. Tex. Feb. 3, 2020), report adopted, 2020 WL 774371 (N.D. Tex. Feb. 18, 2020) (dismissing claims where justifiable reliance pled in conclusory fashion); *Purdin v. Wells Fargo Bank, N.A*., 2016 WL 1161808, at *5 (N.D. Tex. Mar. 23, 2016) ("Purdin does not plead sufficient facts to show that she reasonably relied on Wells Fargo's alleged misrepresentations."); *Simmons v. Outreach Health Cmty. Care Services LP*, 2016 WL 3162147, at *9 (W.D. Tex. June 3, 2016) ("Plaintiff does not allege any facts demonstrating that her reliance on any purported misrepresentation was reasonable, and merely states, in conclusory terms, that her reliance was "justifiabl[e]."); *Admin. Comm. of the Am. Excelsior Company Employee Stock Ownership Tr. v. GreatBanc Tr. Co*., 2015 WL 5775736, at *3 (N.D. Tex. Sept. 30, 2015) ("Plaintiff has pleaded nothing more than conclusory allegations regarding its reliance"); *White v. BAC Home Loans Serv*., 2010 WL 4352711, at *4 (N.D.Tex. Nov. 2, 2010) (dismissing fraud claim where plaintiff failed to "plead any facts tending to show that he justifiably relied" on misrepresentations).

own estimates of life expectancy and future costs). SAC ¶¶ 293-726. Yet the complaint alleges essentially nothing about the individual characteristics, abilities or appreciation of facts and circumstances (including their investment background or prior knowledge of life settlements) of any Plaintiff.  Moreover, the record here is replete with considerable and specific cautionary language (*i.e.*, "red flags") provided to the Plaintiffs before they invested regarding the very same subject matter as their fraud allegations. *See* Report at 6-9.[11]  Furthermore, Plaintiffs' allegations include the sort of vague, optimistic statements and puffery routinely found to be inadequate to support justifiable reliance by investors (for example, that "the investments were 'safe,' low-risk investments").[12] Yet the SAC says nothing about why it would be justifiable for any particular Plaintiff to rely on an alleged representation that the investments were "'safe' low-risk investments"[13]—especially considering the cautionary language provided to Plaintiffs. *See, e.g*., Report at 6 ("THIS IS A HIGHLY SPECULATIVE INVESTMENT. IT IS DESIGNED FOR SOPHISTICATED INVESTORS WHO ARE ABLE TO BEAR THE ECONOMIC RISK OF THE LOSS OF THEIR INVESTMENT[.]").

Courts agree that conclusory allegations of justifiable reliance are particularly insufficient

---

[11] "Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control.*" Simmons v. Peavy–Welsh Lumber Co*., 113 F.2d 812, 813 (5th Cir. 1940); accord *Rogers v. City of Yoakum*, 660 Fed. Appx. 279, 285 (5th Cir. 2016).

[12] "[V]ague optimistic statements are not actionable because a reasonable investor would not rely on them." *In re Enron Corp. Sec., Derivative & ERISA Litig.,* 235 F. Supp. 2d 549, 576 (S.D. Tex. 2002); *see also, e.g., Dinnen v. Kneen,* 2017 WL 4163356, at *6 (D. Colo. Sept. 19, 2017) ("Defendants' statement that plaintiff would double his money is mere puffery and no reasonable investor would rely on such representations.").

[13] *See e.g., Sejin Precision Indus. Co., Ltd. v. Citibank, N.A.,* 2017 WL 4350323, at *7 (S.D.N.Y. June 28, 2017), aff'd, 726 Fed. Appx. 27 (2d Cir. 2018), citing *DH Cattle Holdings Co. v. Smith*, 607 N.Y.S.2d 227, 231 (1st Dep't 1994) (assurances that a venture is a "safe investment" are "generally considered, not actionable statements of fact, but mere opinion and puffery"); *Thuman v. Dembski*, 2017 WL 3614522, at *5 (W.D.N.Y. Apr. 4, 2017), report adopted, 2021 WL 1865552 (W.D.N.Y. May 10, 2021) (alleged misrepresentation that fund "was a safe investment" was not actionable as a matter of law).

when asserted, as in the present case, globally on behalf of multiple Plaintiffs.  For example, faced

with allegations of justifiable reliance like those in Plaintiffs' SAC, Judge Fitzwater ruled that:

> [P]laintiffs do not plead any facts that permit the reasonable inference that either [of them] took an action (or refrained from acting) in *justifiable reliance* on a representation made by either of the defendants. ... The only allegation in the second amended complaint that touches on these elements is conclusory: "Plaintiffs relied on Defendants' nondisclosure and suffered significant injuries as a result of acting or refraining from acting without knowledge of the undisclosed facts." ... That allegation is nothing more than a formulaic recitation of two of the elements of fraud by omission and thus is insufficient to state a claim.

*Maynard v. PayPal, Inc.*, 2019 WL 3552432, at *9 (N.D. Tex. Aug. 5, 2019) (emphasis added).

Similarly, in *Model Drug, Inc. v. Amerisourcebergen Drug Corp.,* the court stated:

> Model merely alleges that "in justifiable and reasonable reliance on [ABDC's] misrepresentations and omissions," it entered into the 2009 PVA and used the CSOS program. Again, however, such bald and conclusory allegations – without any factual averments to demonstrate that the reliance was reasonable – fail to meet Rule 9(b)'s pleading standards.

2013 WL 12497595, at *16 (E.D. Cal. Dec. 13, 2013).

In *Top Gun Ammo Sales, LLC v. COF Techs., LLC*, the court found:

> Top Gun merely pleads that it provided COF with two hundred thousand dollars "[i]n response to and [in] justifiable reliance upon COF Defendants' false representations." ... But that allegation is a conclusory, "formulaic recitation" of the element, *Twombly*, 550 U.S. at 570, and also fails, under Rule 9(b), to allege "how" Top Gun's reliance was justified.

2022 WL 823061, at *9 (E.D. Mo. Mar. 18, 2022).

Plaintiffs' attempt in the present case to globally allege justifiable reliance on behalf of all

Plaintiffs with a conclusory and formulaic recitation of the element in question is clearly

insufficient.  Additionally, the 100-plus Plaintiffs also all individually make (identical) cursory

allegations regarding reliance that are not only equally conclusory but *fail to even address whether*

*reliance was justifiable.*  For instance, Plaintiff Lawson alleges "Had any of these facts been

disclosed, Lawson would not have purchased the Conestoga investments" and "Lawson also relied

20

on the material misrepresentations identified above ..." SAC ¶ 295-96.  Using the same verbiage as Lawson, the other Plaintiffs each assert in conclusory terms that they acted in reliance, but they also do not attempt to allege (even in conclusory fashion) that any such reliance was *justifiable*. SAC 293-726.  Of course, a "plaintiff must show that it actually relied on the defendant's representation and, *also, that such reliance was justifiable.*"  *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018). Conclusory allegations of actual reliance do not establish the additional required element that such reliance was justifiable. In short, Plaintiffs' identical, cookie-cutter allegations of "reliance" fail to speak to *justifiable* reliance and thus add nothing to their conclusory, global allegations of justifiable reliance.

A similar attempt to plead reliance on behalf of numerous different Plaintiffs using generalized, copy-and-paste style allegations was rejected in *Taddeo v. Taddeo,* 2011 WL 4074433 (D. Nev. Sept. 13, 2011).  In *Taddeo,* the court explained:

> The claim for fraud of each Plaintiff contains a very similar paragraph attempting to satisfy the pleading requirement for facts showing reliance. ... Other than the purchase date, these paragraphs contain no facts indicating justifiable reliance or damage resulting from the alleged fraud. The TAC contains only formulaic recitations about Plaintiffs' justified reliance and loss. It contains no specific facts showing that Defendants made a statement or omission upon which Plaintiffs reasonably relied. The TAC has no specific facts showing that Plaintiffs' reasonable reliance caused the loss. This conclusory pleading is inadequate to satisfy Rule 9(b).

2011 WL 4074433, at *5; *see* also *Ackerman*, 172 F.3d at 470 ("[Y]ou cannot get around the requirements of [Rule 9(b)] just by joining a lot of separate cases into one."); *Anderson*, 2013 WL 1249154, at *4 ("The fact that Plaintiffs have elected to pursue their claims in a single complaint does not relieve them of the obligation to plead their individual claims sufficiently.").[14]

---

[14] *See also, gen., Lachman v. Revlon, Inc.*, 487 F. Supp. 3d 111, 126 (E.D.N.Y. 2020) (rejecting copy-and-paste approach to pleading fraud); *Washington v. Util. Trailer Mfg. Co.,* 2014 WL 2831189, at *3 (M.D. Ala. June 23, 2014) (amended pleading that repeated the same allegations for each Plaintiff "copy and paste style" with only basic individual information "suffers from the same lack of specificity as the original complaint and continues to treat all twelve plaintiffs identically").

Plaintiffs have failed to "plead *with requisite specificity* required by Rule 9(b) *the justifiable reliance of each Plaintiff, individually,* on one or more misrepresentations, which must also be specified." *In re Enron*, 762 F. Supp. 2d at 1021 (emphasis added). Because Plaintiffs have offered only conclusory allegations that reliance was justifiable, the Court should grant Defendants' Motion to Dismiss Plaintiffs' claims sounding in fraud (common law fraud, fraud by nondisclosure, securities fraud, civil conspiracy, and breach of fiduciary duty).

### 3.  All fraud-based claims should be dismissed for additional reasons.

Plaintiffs have also failed to allege *actual* reliance on any misrepresentation.  Likely because not every Plaintiff actually received or considered every "marketing material," each Plaintiff undermines their attempt to pled actual reliance by alleging they "relied on the material misrepresentations identified above from the PSS, Brochure, PPM, and Welcome Letter, either directly *or indirectly*." *See, e.g.,* SAC at ¶¶ 296, 300, etc. (emphasis added).  However, Texas law "requires a plaintiff to prove that the plaintiff *actually* based decisions upon the defendant's misstatements or omissions." *Steiner v. Southmark Corp.*, 734 F. Supp. 269, 275 (N.D. Tex. 1990); *In re Enron Corp. Sec., Derivative & ""ERISA" Litig.,* 490 F. Supp. 2d 784, 814 (S.D. Tex. 2007) ("Texas courts require a showing of actual reliance and do not recognize a fraud-on-the-market theory of reliance for common law claims.").  Because Plaintiffs failed to identify any specific misrepresentation relied on directly as opposed to *indirectly*, the misrepresentations claims should be dismissed. *See* Motion to Dismiss (Doc. 208) at 16-19.

Plaintiffs' omission claims fail for several additional reasons.  *See* Motion to Dismiss (Doc. 209) at 24-32.  Claims that JSS should have been identified to Plaintiffs fail because no facts are alleged to support the conclusory assertion that merely identifying JSS would have been material

to any Plaintiff.  There is simply no indication any Plaintiff would have known anything about JSS if JSS had been identified.  *See* Motion to Dismiss (Doc. 209) at 25.

And, all claims based on an alleged failure to disclose that McDermott and/or JSS had been involved in prior life settlement "scams" should be dismissed because there is do duty to admit the truth of and then disclose unproven allegations.  *See Hoffman v. AmericaHomeKey, Inc.,* 23 F. Supp. 3d 734, 745 (N.D. Tex. 2014) ("[P]laintiff must allege facts showing that a defendant had such a *duty* to disclose under Rule 9(b)."); *In re Facebook, Inc. Sec. Litig.,* 477 F. Supp. 3d 980, 1023–24 (N.D. Cal. 2020) ("[C]ompanies are not required to engage in 'self-flagellation' by disclosing unproven allegations."), citing *Haberland v. Bulkeley*, 896 F. Supp. 2d 410, 426 (E.D.N.C. 2012); accord *In re Browning-Ferris Indus., Inc. S'holder Derivative Litig*., 830 F. Supp. 361, 368 (S.D. Tex. 1993), aff'd sub nom. *Cohen v. Ruckelshaus,* 20 F.3d 465 (5th Cir. 1994) (no duty to disclose accusations or the appointment of a special committee to investigate accusations); *see also gen., Baker v. Great N. Energy, Inc.,* 64 F. Supp. 3d 965, 975 (N.D. Tex. 2014) (granting motion to dismiss and rejecting "a rule under which a person is per se liable for fraud if he or she asks for or receive investors' funds without disclosing that he or she, or an affiliate manager, has been charged in the past of financial improprieties").  *See* Motion to Dismiss (Doc. 209) at 25-29.

Further, all Claims based on alleged failures to disclose that premium costs would "*substantially* increase and that the annual premiums would *significantly* exceed the amount stated on the PSS" should be dismissed because no facts are alleged to indicate any Defendant knew that to be the case. *See* Motion to Dismiss (Doc. 209) at 30-32.  Bare allegations that a defendant "knew" or "should have known" statements were "false at the time they were made" are insufficient and "must be supported by facts that detail that [the defendant] either 'knew' or 'should

have known' that these purported statements were false." *Rodriguez v. Tranckino,* 2013 WL 12140297, at *8 (S.D. Tex. June 5, 2013) (emphasis added); *see also, e.g., Samsung Elecs. Am., Inc. v. Chung*, 2018 WL 3475593 (N.D. Tex. July 19, 2018).  *Gipson v. Deutsche Bank Nat. Tr. Co,* 2015 WL 2079514, at *7 (N.D. Tex. May 4, 2015).  Such claims are also improperly conclusory because are no facts are pled to explain what is meant by a "substantial" or "significant" increase.  *See* Motion to Dismiss (Doc. 209) at 30-32.

## IV. CONCLUSION AND PRAYER

Defendants Conestoga Settlement Services, LLC; Conestoga International, LLC; Conestoga Trust Services, LLC, and Michael McDermott respectfully request that the Court grant the Motion to Dismiss Plaintiff's claims for common law fraud, fraud by nondisclosure, securities fraud, civil conspiracy, and breach of fiduciary duty, and grant said Defendants such further relief to which each may be entitled.

Dated: January 23, 2023

Respectfully submitted,

**HEYGOOD, ORR & PEARSON**

*/s/ James Craig Orr, Jr.*
James Craig Orr, Jr.
State Bar No. 15313550
jim@hop-law.com
6363 North State Highway 161, Suite 450
Irving, Texas 75038
Tel: (214) 237-9001
Fax: (214) 237-9002

**ATTORNEYS FOR DEFENDANTS
CONESTOGA SETTLEMENT SERVICES
LLC, CONESTOGA INTERNATIONAL LLC,
CONESTOGA TRUST SERVICES, LLC,
and MICHAEL MCDERMOTT**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney certifies that the foregoing was served on each counsel of record who has made an appearance in this case via the Court's automated e-filing system on this 23rd day of January 2023

<u>/s/ James Craig Orr, Jr.</u>
James Craig Orr, Jr.